[Crim. No. 8593.   Second Dist., Div. Four.   Dec. 6, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. OSCAR CASIO AGUILAR, Defendant and Appellant.

George V. Denny III, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and C. A. Collins, Deputy Attorney General, for Plaintiff and Respondent.

BURKE, P. J.—On rehearing.   Does the possession of two spoons, which are parts of narcotic injection kits, from the scrapings of which a forensic chemist was able to detect a minuscule amount of heroin, constitute the known possession of the narcotic itself?   This is the principal question in this appeal.

Defendant-appellant Oscar Aguilar and codefendant James Aguilar were charged with the possession of heroin in violation of section 11500 of the Health and Safety Code. They were also charged with three prior felony convictions. Each entered a plea of not guilty and denied the prior convictions. Trial was by the court, each defendant and all counsel having waived trial by jury. Defendant Oscar Aguilar was found guilty and two of the prior felonies alleged were found to be true. Codefendant James C. Aguilar was found not guilty. Probation was denied and defendant was sentenced to the state prison for the term prescribed by law, which sentence was ordered ''to run concurrently with any time owing on parole.''

Immediately following the arrest of appellant in the driveway of a motel the officers conducted a search of the motel room occupied by him and his brother. Two brown paper-wrapped packages were found underneath a bed. Upon the officers' discovery of these packages, appellant stated, ''There is nothing in there but an outfit.'' The packages contained hypodermic needles, spoons and eye droppers. In a conversation with Sergeant Virgin, appellant stated that he was ''hot'' (meaning addicted to narcotics); that he had done well for a year on the Naline program, but that he had met a fellow who ''turned him on again.'' He had been using narcotics for more than one month ''real heavy.'' He related that he was ''running'' from his parole officer, and that he and codefendant had moved into the motel that day.

William King, a forensic chemist, testified that he examined ''debris'' (scrapings), found on each of the two spoons discovered in appellant's motel room, and in his opinion the debris contained heroin.

On petition for rehearing, court-appointed counsel urges that the Legislature intended to separate the crime of possession of narcotics paraphernalia used for unlawfully injecting a narcotic (Health & Saf. Code, § 11555), a misdemeanor, from the more serious offense of possessing the narcotic itself (Health & Saf. Code, § 11500), which it classified as a felony; that the evidence in this case showed appellant and his brother, codefendant, had possession of two used narcotic kits, which they freely admitted; that this is the only offense they are shown to have committed and that to permit evidence of minuscule, unrecognizable scrapings from parts of the kits to be used as evidence of possession of narcotics thwarts the purpose of the Legislature in establishing the

two classes of offenses. Undoubtedly, under the evidence presented in this case appellant could have been prosecuted for the lesser offense, but with the presence of a detectable trace of the narcotic on the spoons he was prosecuted for possession of heroin.

Appellant maintains the People's evidence was insufficient as a matter of law to convict him of possession, because the amount of heroin found was infinitesimal. "The cases hold that the statute [Health & Saf. Code, § 11500] does not require the possession of any specific quantity of narcotics. [Citations.]" (*People* v. *Anderson,* 199 Cal.App.2d 510, 520, 521 [18 Cal.Rptr. 793].) In the latter case the prosecution's forensic chemist testified that the capsule which was in defendant's possession contained a few milligrams of white powder found to be heroin: (p. 520) " 'possibly about five milligrams, maybe a little less' (which he said would be about 5/1000ths of a gram—and that it takes about 28.4 grams to make one ounce); that the capsule was 'substantially empty.' "

In *People* v. *Marich,* 201 Cal.App.2d 462 [19 Cal.Rptr. 909], a conviction for unlawful possession was based on expert testimony that the residue found on a piece of cotton, and in the folds of a piece of paper (folded in a manner indicating it was used as a bindle), was heroin. The amount found in the bindle consisted of "several powdery fragments." This residue was utilized in the course of the chemical analysis. None of the residue in the cotton, a piece of which was cut off for the chemical test, was visible to the naked eye. The forensic chemist testified, however, that the residue in the bindle and cotton, as found, could be used by a person wishing to inject the remains found to be present.

In *People* v. *Salas,* 17 Cal.App.2d 75 [61 P.2d 771], an expert testified that the deposits found on a spoon contained morphine. In addition, a box containing tablets of morphine was found near the point of arrest and evidence was introduced showing the deposits on the spoon and the morphine in the tablets to be the same substance; likewise, a piece of cotton found in the box was of the same quality as cotton found in defendant's car. The court concluded that the evidence was sufficient if believed by the jury to justify their implied finding. One can only speculate as to whether the evidence in *Salas* would have been deemed sufficient had only the residue of morphine on the spoon been found.

Appellant contends that the instant case is clearly dis-

tinguishable from cases where the People's evidence disclosed a small quantity of narcotics but in a recognizable state. In such a situation other evidence showing that the particular defendant was a user of narcotics or was otherwise familiar with the nature of the substance has been held sufficient to cast doubt on his disclaimer of knowledge of the possession of the substance. Thus, in *People* v. *Jones,* 113 Cal.App.2d 567, 570 [248 P.2d 771], a tin can was discovered in defendant's possession in which a few fragments of marijuana were found; it was also shown that defendant had known that there had been marijuana in the can and these facts were held to be sufficient to convict him of the known possession of the narcotic, though present in fragmentary form.

Likewise, in *People* v. *Marich, supra,* 201 Cal.App.2d 462, the several powdery particles of heroin in the folds of a paper bindle were recognizable to a user as heroin. Similarly, in *People* v. *Anderson, supra,* 199 Cal.App.2d 510, the few milligrams of white powder in the "substantially empty" capsule were clearly heroin.

In *People* v. *One 1959 Plymouth Sedan,* 186 Cal.App.2d 871 [9 Cal.Rptr. 104], the small butt of a marijuana cigarette, called a "roach," found in defendant's jacket was held to be sufficient to infer known possession of the narcotic under the circumstances of the case.

All of these cases are clearly distinguishable from the facts in the instant case. Here, we may infer from the evidence that heroin in powder form had first been liquefied and the resultant emulsion drawn from the spoons by means of the hypodermic needles and used for injection purposes. What remained in the bottom of the spoons was residue which was in a completely different form from that of heroin powder. The crystalline incrustations on the spoons could remain in that state indefinitely, long after actual use of the spoons for injection purposes. Appellant's answer upon the finding of the packages in which the narcotic kits were discovered, "There is nothing in there but an outfit," was no doubt an accurate reflection of what he really believed. Any nonscientifically trained person, albeit an addict, observing the spoons, likewise would have been unable to detect the presence of heroin since neither powder nor liquid remained. It is not scientific measurement and detection which is the ultimate test of the known possession of a narcotic, but rather the awareness of the defendant of the pres-

ence of the narcotic. Guilt or innocence on a charge of illegal possession may not be determined solely by the skill of the forensic chemist in isolating a trace of the prohibited narcotic in articles possessed by the defendant. As forensic science, measuring devices and techniques improve, smaller and smaller amounts of residue are required for the chemist to detect the presence of the narcotic. The presence of the narcotic must be reflected in such form as reasonably imputes knowledge to the defendant. Reasonableness is defined in *In re Hall,* 50 Cal.App. 786, at p. 790 [195 P. 975] : "As applied to a law, 'reasonableness' is manifestly not what extremists upon the one side or the other would deem fit and fair. As it is well put in one of the cases, reasonableness is what 'from the calm sea level' of common sense, applied to the whole situation, is not illegitimate in view of the end attained."

A conviction for possession of a narcotic requires evidence of defendant's awareness of the presence of the narcotic or of facts from which such awareness or knowledge may be inferred. (See *People* v. *Gory,* 28 Cal.2d 450, 456 [170 P.2d 433].)

Accordingly, we conclude that under the circumstances of this case, where the narcotic was imperceptible to the human eye and its presence, qualitatively and quantitively, could be detected only with the aid of a forensic chemist and laboratory, the evidence is not sufficient to sustain a conviction of known possession of the narcotic.

For these reasons the judgment is reversed.

Jefferson, J., and Kingsley, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied January 29, 1964.