[Crim. No. 10351.   Second Dist., Div. Three.   Feb. 28, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES JACKSON NAILOR, Defendant and Appellant.

James Jackson Nailor, in pro. per., and Melvin Lebe, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Plaintiff and Respondent.

KAUS, J.—Defendant was convicted on one count of possession of heroin (Health & Saf. Code, § 11500) and appeals.

*People's Case.*

On July 5, 1962, Officer Nelson of the Los Angeles Police Department was on a narcotics investigation with his partner, Sergeant Cooper. He was wearing plain clothes. For undisclosed reasons he had entered the El Rey Hotel at 511 East Sixth Street and was walking along the second floor corridor when he saw defendant coming toward him. Defendant was 10 to 12 feet away from him and Nelson noticed a small white object in his right hand. At that moment it was hard to tell what the object was, but "having seen this type of object before" he "assumed" it was a "bindle." Defendant then switched the object from his right hand to his left hand and at that moment Nelson "came to the conclusion" that it was a "bindle." During his six years on the force he had worked on the narcotics detail from time to time and had made arrests. He knew that heroin was frequently packaged in small bindles.

He then stopped the defendant, saying "just a minute." With his left hand defendant made a motion toward his mouth. Nelson grabbed the hand and pulled it down, at which time a bindle dropped to the floor. He picked it up, examined it, noticed that it contained a small amount of white powder and placed the defendant under arrest.

It was stipulated that the bindle contained two grains of powder and that it contained heroin. There is nothing in the record to indicate the purity of the powder.

A conversation between defendant and Nelson ensued at the hotel. Defendant said that he had been in town about three weeks from Denver, that he had "used" a few times since coming to Los Angeles and that the officers found the "stuff" on the floor and not on him. He said that if he were permitted back out on the street he would be able to tell the officers where they could find a lot more stuff. On cross-examination the officer said that he made up his mind to stop defendant when he first saw the object in his hand.

*Defendant's Case.*

Defendant testified that when he walked down the hallway he was only carrying a key in his hand. His first notice that the officers were taking an interest in him was the statement by one to the other: "Don't let him put his hand to his mouth." His hand was then grabbed. One of the officers identified himself as such and demanded that he open his hands. All they found was the key. His room was then searched and nothing found.

A conversation ensued between defendant and the officers, in which he admitted a narcotics conviction in St. Louis in 1953. The officer then made overtures to him to become an informer. Defendant refused, because he did not know anyone in Los Angeles who was "fooling around" with drugs. Later at the police station he was shown the bindle and denied having seen it before or knowing its contents.

On cross-examination defendant said that he did not, at any time, see one of the officers pick up the bindle from the floor of the hallway and he also denied having accused the officer of having found it on the floor. He admitted that he "most certainly" had seen heroin before, but never packaged in a bindle, only in capsules. He denied having offered to become an informer.

Defendant, who is most ably represented by appointed counsel on this appeal, raises numerous points which will be discussed in the order presented.

*Admission of Incriminating Statements.*

██ Unquestionably the admission of defendant's statements to the effect that he had used heroin since arriving in Los Angeles and that he would be able to put the finger on peddlers, if released, violated the rule of *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]. The People concede this. It is also true that the statements were not a confession. They were incriminating only in that they were additional evidence of defendant's knowledge of the narcotic nature of the powder in the bindle. Since they were not a confession, our inquiry is whether they were prejudicial. (*People* v. *Hillery,* 62 Cal.2d 692, 712-713 [44 Cal.Rptr. 30, 401 P.2d 382]; *People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243].)

The result of the trial hinges entirely on the credibility of Officer Nelson as opposed to that of defendant. If the testimony concerning defendant's statements had been supplied by someone other than Officer Nelson, they would strongly corroborate his version of the incidents in the hallway and tend to be prejudicial. However, since the evidence concerning the statements came from Nelson's lips and was denied by defendant in all damaging particulars, we do not see the prejudice. If the court believed Nelson, defendant was guilty beyond a reasonable doubt with or without the statements. If the court believed defendant he was not guilty.

True, had the statements not been admitted, defendant would not have been impelled to deny them and could not have been cross-examined on his denial; however there was nothing either in his direct or cross-examination which damaged his case. The value of the different versions of the statement for impeachment purposes also depended entirely on Nelson's credibility.

While defendant's statements somewhat strengthen the prosecution's case on defendant's knowledge of the narcotic nature of the powder, they were not the only evidence on that element of the offense. His conduct in shifting the powder from one hand to the other and his apparent attempt to swallow it, were sufficient by themselves to support the implied finding. (*People* v. *Solis,* 193 Cal.App.2d 68, 77, fn. 4 [13 Cal.Rptr. 813].) It is inconceivable that once the trial court believed Officer Nelson's version of the events in the hallway, defendant would have been acquitted for a lack of evidence of knowledge of the narcotic character of the substance.

*Propriety of Arrest.*

██ There is no question that if Officer Nelson acted on a

mere hunch, however correct it proved to be, when he grabbed defendant's arm thereby releasing the bindle, its seizure was unjustified. (*People* v. *One 1960 Cadillac Coupe,* 62 Cal.2d 92, 96 [41 Cal.Rptr. 290, 396 P.2d 706].) While this is certainly a borderline case, we cannot say that having in mind the experience of Officer Nelson, the appearance of the bindle and defendant's switching it from one hand to the other, the officer was not entitled to attempt to detain him for questioning. (*People* v. *Mickelson,* 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658].) When Nelson's suspicions were apparently confirmed by Nailor's attempt to secrete the bindle in his mouth he was entitled to effect the arrest and prevent the destruction of the evidence by grabbing his arm.

Defendant's cases are clearly distinguishable. In *People* v. *Brown,* 45 Cal.2d 640 [290 P.2d 528] the People did not even argue that before the officers grabbed the defendant's right wrist they had any reason whatever to suspect her of a crime. Indeed the only justification for the search that was put forward was its success. In *Hood* v. *Superior Court,* 220 Cal. App.2d 242 [33 Cal.Rptr. 782], the People chose not to rely on the information they received from the confidential informant. With that element eliminated from probable cause, all that was left was a defendant who left his home in the company of another, who drove away in the other's automobile and who looked back once. The car was immediately stopped by the pursuing officers and defendant reached with his right hand toward his left shirt pocket. Nothing was seen in his hand. The search of the defendant, his companion and of the car turned up nothing. The officers then, without a warrant and over the violent protest of defendant, searched his residence and found some narcotics therein. It seems clear to us that the only search involved in *Hood* is the one at the residence which was clearly invalid for lack of a warrant. (*People* v. *Cruz,* 61 Cal.2d 861, 865 [40 Cal.Rptr. 841, 395 P.2d 889].) Moreover the conduct of Hood and his companion fell far short of that of Nailor.

*People* v. *Garrett,* 237 Cal.App.2d 701 [47 Cal.Rptr. 194] is similar to *Hood* except that in *Garrett* the search on the street turned up a balloon. Again, disregarding confidential information, the officers without any cause whatever stopped defendant on the street and one of them identified himself as a police officer. Defendant started to run and made a motion toward his mouth. He was caught, a scuffle ensued and he dropped the balloon. Other narcotics were then discovered in his nearby apartment.

The distinguishing feature between *Brown, Hood* and *Garrett* and the present case is obviously the reasonableness of the officer's conclusion that the object he saw in defendant's hand was a bindle. Once that is established, it is clear that he was entitled to stop defendant, which he did by saying ''just a minute.'' When defendant, in response, moved his hand toward his mouth probable cause to arrest was established. We agree with the trial judge that the officer acted within the law.

*Denial of Right to Counsel.*

When defendant was arraigned in the superior court he demanded that a different public defender be appointed for him because the one who was representing him in the arraignment court did not want to make a motion under Penal Code, section 995, as defendant thought he should. The trial judge explained to defendant that he would have to abide by the judgment of his court-appointed attorney and refused to appoint another deputy from the public defender's office. The deputy public defender stated to the court that in his view a motion under 995 would not be advisable or proper and that therefore he would not make such a motion. Defendant then pleaded not guilty.

It is now argued that the refusal of the public defender to make the 995 motion and of the court to appoint another public defender deprived defendant of his right to counsel. It is pointed out that if defendant were rich and his attorney refused to make such a motion, he could always hire another attorney. The argument misses the point: there is no constitutional right to an attorney who will conduct the defense of the case in accordance with an indigent defendant's whims. (*People* v. *Mattson*, 51 Cal.2d 777, 793 [336 P.2d 937]; *In re Atchley*, 48 Cal.2d 408, 418-419 [310 P.2d 15].) The ability of a rich client to change attorneys like shirts when they refuse to do his bidding, is not necessarily an advantage. Until the contrary is proved we will continue to believe that a member of the legal profession knows better how to conduct a lawsuit than his lay client.

If criminal proceedings against a defendant who himself is a member of the Bar can be set aside because he was denied the assistance of counsel (*Bogart* v. *Superior Court*, 60 Cal.2d 436 [34 Cal.Rptr. 850, 386 P.2d 474]) it would be strange if a lay defendant could claim denial of effective representation because his appointed counsel will not let the client run the case.

Without attempting to weaken what we have just said, which would be true even if defendant's counsel had made an error in judgment as long as it did not amount to a complete denial of representation (cf. *People* v. *Ibarra,* 60 Cal.2d 460, 464-468 [34 Cal.Rptr. 863, 386 P.2d 487]), it is obvious to us that the public defender's refusal to make a motion to set aside the information was good judgment. The record before us has been augmented by a transcript of the preliminary hearing which has been read and we are convinced that any such motion would have been a waste of time.

*Evaluation of Evidence.*

Defendant argues that the trial court did not judge Officer Nelson's testimony by the same standards as the testimony of any other witness. This argument is based on certain remarks of the trial court during an argument concerning the admissibility of the bindle and its contents. During that argument the deputy district attorney submitted that if the officer were to be disbelieved, it could only be on the basis that he had committed wilful perjury. The court interjected as follows: "THE COURT: You would have to go further in this case: He would have to go out deliberately to frame a man." The court's observation was manifestly correct. While it is conceivable that the officer was innocently mistaken when he testified about seeing the defendant and defendant's movement toward his mouth, the fact is that narcotics were produced from somewhere, if not at the hotel, then at the station. If they did not come from the defendant's possession, then obviously the officer must indeed have "framed" him. Any innocent explanation defies common sense. There is no basis for the suggestion that the court refused to entertain the possibility that the officer might be innocently mistaken simply because he was an officer. The facts of the case simply did not permit such an inference.

*Argument Based on People* v. *Aguilar, 223 Cal.App.2d 119 [35 Cal.Rptr. 516].*

It is finally argued that because there was no evidence of the percentage of heroin in the two grains of powder found in the bindle, the case comes within *People* v. *Aguilar,* 223 Cal.App.2d 119 [35 Cal.Rptr. 516]. We disagree. While reasonable men may differ and have differed concerning the breadth of the holding in *People* v. *Aguilar* (see our discussion in *People* v. *Perez,* 239 Cal.App.2d 1 [48 Cal.Rptr. 596]) this case obviously does not come within the rule. In *Aguilar*

all that was seized were some crystalline encrustations on spoons, obviously the inevitable remains after they had been used by somebody to help administer heroin. In effect, *Aguilar* held that if possession of food is a crime, the possession of a dirty plate is insufficient to convict. Here we have two grains of powder, containing an unspecified percentage of heroin, ready for use. We know of no case requiring the prosecution to prove the potency of the narcotic.

██ It is a matter of judicial notice that milk sugar is used to dilute heroin. (*People* v. *Torres*, 56 Cal.2d 864, 866-867 [17 Cal.Rptr. 495, 366 P.2d 823].) ██ Assuming for the sake of argument, that we should presume that the powder was not pure heroin because the stipulation did not specify the percentage content, and assuming further that there is a point where the percentage becomes so minute that the mixture is no longer a narcotic, which we need not decide, defendant should have developed the facts. Instead he accepted the stipulation that the powder "contains heroin—a narcotic."

The judgment is affirmed.

Shinn, P. J., and Ford, J., concurred.

A petition for a rehearing was denied March 15, 1966, and appellant's petition for a hearing by the Supreme Court was denied April 27, 1966.