[Crim. No. 12478.   Second Dist., Div. Two.   Feb. 16, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. RAMON JESUS BIANEZ, Defendant and Appellant.

David C. Marcus for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Ronald M. George and Philip L. Siracuse, Deputy Attorneys General, for Plaintiff and Respondent.

FLEMING, J.—Appeal from a conviction for possession of a narcotic (Health & Saf. Code, § 11500).

The sequence of events in the case could serve as the scenario for a Mack Sennett comedy starring the Keystone Kops, entitled, To Foil the Fuzz, Stash the Stuff.

On the afternoon of 30 November 1965, six policemen in two automobiles drove to Glamis Street to look for two prisoners who had escaped their confinement for narcotic offenses in Chino. The officers had descriptions of the escaped prisoners, John Maldonado and Edward Maldonado, and information they might be at the house of their mother in the 13100 block of Glamis Street.

On Glamis Street Sergeant Horrall drove the first automobile into the driveway of a house in front of which was parked a vehicle with a man who resembled John Maldonado in the driver's seat. On seeing the police the man in the vehicle immediately sat up and started to blow the car's horn repeatedly. Sergeant Ross in the second automobile pulled in front of the vehicle at the curb, and Officer Anthony arrested its occupant.

Interpreting the sounding of the horn as a warning signal to those inside the premises, Sergeant Horrall ran down the west side of the house, and Sergeant Ross ran around the east side into the backyard. As Sergeant Ross rounded the corner he saw appellant Bianez, who fitted the description of Edward Maldonado, running from the garage apartment in the rear of the premises carrying in his hand a large bowl of loose white powder. When Bianez sighted the officer he changed direction and headed back toward the open door of the garage apartment. Sergeant Ross had previously heard of narcotic activity on the premises, and on getting a closer look at the powder in the bowl he concluded it was heroin. He ordered Bianez to halt and ran directly toward him. Bianez swung the bowl as a weapon, but Sergeant Ross ducked under the swinging arm

and grappled with Bianez in an attempt to place him under arrest. Sergeant Horrall rallied to his colleague's assistance. Bianez, too, received reinforcement in the person of Miss Anita Ramirez, who came from the house and started beating, kicking, scratching, and cursing the officers struggling with Bianez. The bowl landed on the sidewalk and broke.

An old lady materialized from the residence, turned on a hose, and washed the powdery substance off the bowl and the sidewalk.

Two more officers entered the fray in the backyard, and Bianez and Miss Ramirez were finally subdued and handcuffed. In Sergeant Ross' opinion Bianez was under the influence of a narcotic. The pupils of his eyes were contracted and fixed in a pinpoint position and their size did not change in response to varying degrees of light. Puncture marks were found on his arm, four or five in the interior of the left elbow, and one mark was bleeding.

The broken portions of the bowl had been washed clean by the water.

Through the open door of the garage apartment Sergeant Ross saw a tray on which he found a hypodermic needle, an eye dropper syringe, a small bottle cap, a charred measuring spoon, a metal funnel, a number of rubber balloons cut into pieces, a piece of Kleenex with fresh blood on it, five rubber balloons rolled into small containers and filled with a powdery substance, and several matchbook covers. He seized the items on the tray as evidence and took them to the police station.

At the police station the items from the apartment including the five balloons were placed on a table to be marked and tabulated as evidence. While the six officers were occupied with the process of booking the persons they had arrested, Officer Anthony saw Bianez scarf the balloons and swallow one of them. A scuffle ensued between three police officers and Bianez. The officers grappled with Bianez and held the side of his mouth while Bianez shook his head. At the end of the struggle all five balloons were missing, and none was thereafter recovered.

A qualified chemist analyzed the various items of evidence and found 10 milligrams of heroin residue in the spoon and 10 milligrams of heroin residue on one of the matchbook covers.

Appellant contends (1) his arrest was without reasonable cause, and therefore the search was illegal, (2) the evidence was insufficient to support a conviction for possession of a narcotic.

## 1. *The Arrest Was Based on Reasonable Cause and the Search and Seizure Were Lawful.*

The police went to Glamis Street to recapture two escaped prisoners, and on their approach a young man who resembled one of the escaped prisoners signalled rapidly with the horn of his automobile, a circumstance which gave the police cause to believe they had flushed their quarry and that a further escape might be in progress. The police were justified in entering the premises (*People* v. *Willard,* 238 Cal.App.2d 292 [47 Cal.Rptr. 734] ; *People* v. *Alexander,* 253 Cal.App.2d 691, 698-700 [61 Cal.Rptr. 814]) and justified in temporarily detaining anyone there who answered the description of the men for whom they were looking. In *People* v. *Henze,* 253 Cal.App.2d 986, 988 [61 Cal.Rptr. 545], we observed that temporary detention is justified when the peace officer rationally suspects that some activity out of the ordinary is taking place, there is something to connect the person under suspicion with the unusual activity, and there is some suggestion that the activity is related to crime. On reaching the backyard Officer Ross saw appellant, who resembled one of the escaped prisoners, running from the garage and carrying in his hand a large bowl of loose white powder. The officer possessed information about narcotic activity on the premises and concluded the substance in the bowl was probably heroin. He thereupon had reasonable cause to arrest appellant (Pen. Code, § 836), and to search the premises from which appellant had just emerged. (*People* v. *Rodriguez,* 238 Cal.App.2d 682 [48 Cal.Rptr. 117].) The items seized as a result of this search were properly admitted in evidence.

## 2. *The Evidence Was Sufficient to Sustain the Charge of Possession of Narcotics*

Appellant in effect argues that an accused who successfully destroys a suspected narcotic before its nature has been chemically established cannot be prosecuted for possession of that narcotic, regardless of the strength of other evidence against him. Because the prosecution only presented the chemical analysis of a small amount of residue, he argues there was insufficient evidence to support his conviction. The crime of possession of a narcotic, says appellant, requires proof of possession of an amount which has a potential for consumption or for sale, a requirement not satisfied by proof of possession of a small amount of narcotic residue not shown to have such potential. (*People* v. *Leal,* 64 Cal.2d 504 [50

Cal.Rptr. 777, 413 P.2d 665]; *People* v. *Sullivan*, 234 Cal. App.2d 562 [44 Cal.Rptr. 524]; and *People* v. *Aguilar*, 223 Cal.App.2d 119 [35 Cal.Rptr. 516].)

The facts relied on by the prosecution in *Leal, Sullivan,* and *Aguilar* were similar in each case. The police found the accused (A) under the influence of a narcotic; (B) in possession of a narcotic kit; and (C) with a chemically ascertainable residue of narcotic on his kit. In each case this evidence was held insufficient to sustain a conviction for possession of a narcotic. Possession of residue, that is to say a quantity useless for sale or consumption, cannot alone establish the defendant's awareness of the presence of a narcotic, an element necessary to support a charge of knowing possession of a narcotic. "The presence of the narcotic must be reflected in such form as reasonably imputes knowledge to the defendant." (*People* v. *Aguilar*, 223 Cal.App.2d at p. 123.) In short, evidentiary factors A, B, and C are insufficient by themselves to sustain a conviction for possession of a narcotic.

However, this is not to say that proof of possession of a narcotic residue may not be potent evidence against one charged with possession, when combined with other evidence from which an inference of possession may also be drawn. The case of *People* v. *Garcia*, 248 Cal.App.2d 284 [56 Cal.Rptr. 217], illustrates the point. There the police arrested the defendant, who was presumably under the influence of a narcotic, in possession of a narcotic kit, and whose kit contained a chemical trace of heroin. Additionally, the police through an open window had seen the defendant use the narcotic equipment to give himself an injection. We held the evidence sufficient to sustain the conviction for possession of a narcotic, pointing out that the conviction did not rest on defendant's possession of residue but on his observed possession of a usable quantity of narcotic at the time he gave himself the injection. The residue of narcotic established the nature of the substance injected, and that nature once established, all uncertainties about the defendant's knowing possession of a usable amount of narcotic disappeared. Thus in *Garcia* we have elements A, B, and C of *Leal, Sullivan,* and *Aguilar,* fortified by element X, the observed use of the narcotic kit for purposes of an injection. These factors in combination were sufficient to sustain the conviction for possession.

In the present case the defendant was found (A) under the influence of a narcotic; (B) in possession of a narcotic kit; and (C) with narcotic residue on his kit; factors which, as we

have seen, are insufficient by themselves to support a conviction for knowing possession of a narcotic. But two additional factors enter the calculation; the first, the large bowl of loose white powder resembling a narcotic, which Bianez was attempting to dispose of and whose contents were washed away at the time of his arrest by the old lady with the hose; the second, the five balloons containing a powdery substance packaged as narcotics are commonly packaged, which were destroyed by Bianez at the police station. Hence in addition to elements A, B, and C we have element Y (the large bowl of loose white powder resembling heroin), and element Z (the five balloons containing a powdery substance packaged as narcotics are packaged for transport). Additionally, knowledge of unlawful possession is strongly suggested by the attempt to dispose of the contents of the bowl, and by the successful disposition of the five balloons. Rather than this being a case where there is no evidence of knowledge of possession, it is one which reeks with guilty knowledge of wrongdoing.

The possession of a usable quantity of narcotic which supports the conviction is, of course, that of the white powder in the bowl and the powder in the five balloons, not that of the residue on the spoon and the matchbook cover. The importance of the residue is evidentiary and lies in its tendency to prove the contents of the bowl and the balloons. Abstractly expressed, from the presence of A, B, and C, the trial court could readily infer the nature of the substance in Y and Z. (*People* v. *Ihm,* 247 Cal.App.2d 388, 392 [55 Cal.Rptr. 599], and cases there cited.) As in *Garcia,* possession of a usable quantity of narcotic and knowledge of that possession may be inferred logically and reasonably from the evidence in the cause, even though the substance on which the charge is based never became available for chemical analysis.

Judgment affirmed.

Roth, P. J., and Herndon, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 10, 1968.