**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Richie Dean JEFFERS, a/k/a Deanie,
Defendant-Appellant.**

No. 75–1078.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 10, 1975.

Decided Oct. 17, 1975.

James A. Stamos, Chicago, Ill., for defendant-appellant.

John R. Wilks, U. S. Atty., Fort Wayne, Ind., Richard A. Hanning, Asst. U. S. Atty., Hammond, Ind., for plaintiff-appellee.

Before SPRECHER and BAUER, Circuit Judges, and PERRY, Senior District Judge.*

SPRECHER, Circuit Judge.

The primary question in this appeal concerns the quantity of a narcotic nec-

---

* Senior District Judge Joseph Sam Perry of the United States District Court for the Northern District of Illinois is sitting by designation.

essary to obtain a conviction for possession of heroin in violation of 21 U.S.C. § 844(a).

## I

The defendant-petitioner, Richie Dean Jeffers, was arrested at her home at approximately 7:30 a. m. on September 26, 1974, on an unrelated charge. At the time of her arrest she was in bed. While she was dressing, one of the arresting officers, Officer Colby, made a cursory search of a purse which lay near petitioner's bed, to determine if weapons were present. He then gave the purse to the petitioner. As they were leaving for the Hammond Federal Building, the petitioner expressed a desire to leave the purse with her mother, who was present. Officer Colby advised her that she would need the identification in the purse during processing, and so she kept it with her.

During processing at the Hammond Federal Building, petitioner asked another agent, Special Agent Munson, if he would get her "nerve pills" which she said were in the coin purse within her purse. Agent Munson retrieved the purse from another agent, examined the coin purse, but found no nerve pills. He did find, however, a small note folded up, which when unfolded revealed a small quantity of brown powder, subsequently found to contain heroin. Thereafter, upon a more thorough examination of the purse, a small aluminum foil packet containing heroin was also found.

At trial, an expert testified that the note contained 295 milligrams of brown powder containing 32 milligrams of pure heroin and that the foil contained 106 milligrams of brown powder containing 3 milligrams of heroin. The petitioner was indicted and convicted for possession of these two quantities of heroin. She appeals, and for the reasons stated we affirm.

Petitioner brings two principle contentions before this court.[1] First, the petitioner argues that the search of her purse made after her arrest and the seizure of the two packets containing heroin were unlawful, and that the evidence obtained thereby must be suppressed. Second, the petitioner argues that the trial court gave an incorrect instruction since it refused to apply the "usable quantity" doctrine with regard to the amount of heroin found.

## II

In regard to the first issue, we find that the search and seizure under the instant circumstances was proper. Clearly, the search and seizure of the second quantity of heroin (in the foil) stands or falls on the validity of the search and seizure of the first quantity. So the question comes down to whether Agent Munson, when he searched the petitioner's purse to find the "nerve pills" and when he unfolded the note and found the heroin, violated the petitioner's Fourth Amendment rights.

■ Recently, the Supreme Court has handed down two decisions which, at

---

1. The petitioner brings a third contention suggesting that the trial court erred in refusing to hold a pre-trial hearing as to the admissibility of the petitioner's oral statement made during her arrest that the purse containing the packets of heroin was hers. It appears from the transcript, however, that the trial judge was perfectly willing to hold such a hearing:

   The Court: I thought there was another · matter you were raising, whether or not these oral statements—something about that.

   Mr. Stamos [defense counsel]: The Court indicated by the Court's ruling as to the propriety of the admission of those statements, so at this time, Judge, we make no further motion. (Motion to Suppress, Tr. at 30.)

The Court's ruling to which defense counsel referred concerned the admissibility of the packets of heroin, not any oral statements made by the defendant. Nor was any objection made later at trial when Officer Colby testified that the petitioner "said she wanted to leave *her* purse with her mother" (emphasis added). If the petitioner by her concern about this statement is trying to suggest that the statement was taken prior to any *Miranda* warnings, the petitioner by her failure to pursue her motion to suppress prevented the admission of any evidence on the point. She should not gain from this failure.

least in their broad language, seem to cover the situation. In *United States v. Edwards*, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974), the defendant was arrested at night on suspicion of attempting to break into a post office. The next day, the police provided him with another set of clothes, and took his clothes to be examined for the presence of paint chips from the post office window. Upon examination, incriminating paint chips were found. The Supreme Court upheld this search. Mr. Justice White wrote for the Court:

> The prevailing rule under the Fourth Amendment that searches and seizures may not be made without a warrant is subject to various exceptions. One of them permits warrantless searches incident to custodial arrests, . . . and has traditionally been justified by the reasonableness of searching for weapons, instruments of escape, and evidence of crime when a person is taken into official custody and lawfully detained. . . .

> It is also plain that searches and seizures that could be made on the spot at the time of arrest may legally be conducted later when the accused arrives at the place of detention. . . . The courts of appeals have followed this same rule, holding that both the person and the property in his immediate possession may be searched at the station house after the arrest has occurred at another place and if evidence of crime is discovered, it may be seized and admitted in evidence. Nor is there any doubt that clothing or other belongings may be seized upon arrival of the accused at the place of detention and later subjected to laboratory analysis or that the test results are admissible at trial.

415 U.S. at 802–04, 94 S.Ct. at 1236 (citations and footnotes omitted).

Under this rationale, the search of petitioner's purse was permissible since it occurred during the processing of the petitioner at the place of detention only shortly after her arrest.

*United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), provides further support. In that case, the defendant was stopped and arrested for driving without a license and pursuant to the arrest was searched. The search turned up a cigarette pack containing heroin. As Mr. Justice Rehnquist in the majority opinion noted, the search was not motivated out of a feeling of imminent danger on the arresting officer's part. 414 U.S. at 236 n. 7, 94 S.Ct. 467. Indeed, the arresting officer admitted that he had no specific purpose in searching the defendant and that he was unsure as to what was in the cigarette pack until he opened it. "I just searched him [the defendant]. I didn't think about what I was looking for. I just searched him." *Id.* This is clearly the situation that faced Agent Munson. He did not know what he was looking for when he found the note and opened it, but he proceeded, as did the officer in *Robinson*, out of a sense of duty or curiosity to examine the contents of a suspicious object.

Possibly, Mr. Justice Powell in his concurring opinion in *Robinson* put it best. He wrote:

> The Fourth Amendment safeguards the right of "the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." These are areas of an individual's life about which he entertains legitimate expectations of privacy. I believe that an individual lawfully subjected to a custodial arrest retains no significant Fourth Amendment interest in the privacy of his person. Under this view the custodial arrest is the significant intrusion of state power into the privacy of one's person. If the arrest is lawful, the privacy interest guarded by the Fourth Amendment is subordinated to a legitimate and overriding governmental concern. No reason then exists to frustrate law enforcement by requiring some independent justification for a search incident to a lawful custodial arrest. This seems to

me the reason that a valid arrest justifies a full search of the person, even if that search is not narrowly limited by the twin rationales of seizing evidence and disarming the arrestee.

*Id.* at 237, 94 S.Ct. at 494.

Under this rationale, and keeping in mind the added fact that the petitioner here gave up any expectations of privacy she might have had when she asked Agent Munson to look in her coin purse for her "nerve pills" (which were never found), the search of petitioner's purse and the subsequent seizure of the note and heroin were permissible and did not violate the petitioner's rights under the Fourth Amendment. Similarly, keeping in mind the fact that one packet of heroin had already been found, the second search and seizure of the foil packet, *a fortiori*, did not violate petitioner's Fourth Amendment rights.

### III

The second ground for reversal which the petitioner urges, presents a question of first impression, as far as this court can determine, in the federal courts.[2] The petitioner urges that this court adopt a doctrine in regard to narcotic offenses, which some state courts have adopted, called the "usable quantity"

doctrine. Under this doctrine, the government could not obtain a conviction in a narcotics case, especially where minute amounts of contraband were involved unless it proved that the quantity of narcotics possessed represented a quantity capable of use or abuse (i. e., that it was enough to produce the proscribed physiological effect). In effect, then, convictions for possession of narcotics could not be obtained in situations where a few microscopic fragments of marijuana were found in a pants pocket, *Pelham v. State,* 164 Tex.Cr.R. 226, 298 S.W.2d 171 (1957), or where traces of crystalline heroin were scraped from a spoon, *People v. Aguilar,* 223 Cal.App.2d 119, 35 Cal.Rptr. 516 (1963).

Two considerations provide theoretical support for application of the doctrine. First, since narcotics are prohibited because of their adverse effects, it is suggested that the legislature in prohibiting possession of narcotics never intended to prohibit possession of minute quantities which could not produce the proscribed physiological effect.[3] Second, some courts have suggested that possession of minute quantities of a narcotic is insufficient without other evidence to impute knowing and intentional possession to the defendant.[4]

---

**2.** The petitioner cites *Hinton v. United States,* 137 U.S.App.D.C. 388, 424 F.2d 876 (1969), as authority for the proposition that a federal court (and by this we mean a district court or circuit court of appeals as opposed to the local courts of the District of Columbia) has upheld the usable quantity doctrine. The *Hinton* opinion (at 882 n. 29) cites a case from the District of Columbia Court of Appeals, *Edelin v. United States,* 227 A.2d 395, 399 (1967), which had approved the usable quantity doctrine. The reference in *Hinton* to the *Edelin* case, however, was ambiguous. In *Hinton,* the defendant had been arrested with 30 full capsules containing heroin so that the usable quantity doctrine was clearly inapplicable. If we assume, as the petitioner asserts, that *Hinton* cited *Edelin* with approval, such approval is dicta.

**3.** The District of Columbia Court of Appeals in *Edelin v. United States,* 227 A.2d 395, 398–99 (1967), wrote:

Part of the Government's prima facie case is to prove that a substance in defendant's pos-

session . . . is proscribed as a narcotic drug under the statutory scheme of narcotics control. If this substance cannot be sold, if it cannot be administered or dispensed, common sense dictates that it is not such a narcotic as contemplated by Congress to be a danger to society, the possession of which is proscribed.

**4.** "The presence of a narcotic must be reflected in such a form as reasonably imputes knowledge to the defendant." *People v. Aguilar,* 223 Cal.App.2d 119, 123, 35 Cal.Rptr. 516, 519 (1963).

We conclude that possession of a minute crystalline residue of narcotic not intended for consumption or sale and useless for either of these purposes is insufficient evidence to sustain a conviction for *known* possession of a narcotic.

*People v. Sullivan,* 234 Cal.App.2d 562, 565, 44 Cal.Rptr. 524, 526 (1965) (emphasis added).

The first of these considerations, the suggestion that Congress did not intend to prohibit possession of minute quantities of a narcotic useless for consumption or abuse, finds little support in the legislative history of the federal drug laws. The statute itself provides in part: "It shall be unlawful for any person knowingly or intentionally to possess a controlled substance . . . ." 21 U.S.C. § 844(a). Clearly, a person *possesses* a controlled substance whether it be a trace or a pound. The petitioner, however, draws our attention to the Congressional findings and declarations regarding this chapter of title 21, 21 U.S.C. § 801, which provides in part:

> The illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people.

21 U.S.C. § 801(2).

The petitioner suggests that since possession and improper use are linked together in this statement, Congress did not intend to ban all possession but only possession of such amounts as are capable of improper use. This however, concludes too much from the section. The legislative history provides no other clues as to Congress' intent in regard to the question.[5] However the law seems clear on its face, and without solid evidence of a contrary intent, this court will not be moved to engraft an exception into the law which Congress did not see fit to include specifically.

The second consideration, that knowledge and intent to possess a substance cannot be inferred from possession of mere traces of the substance, provides a stronger basis for the "usable quantity" doctrine. Situations like those in *People v. Aguilar*, 223 Cal.App.2d 119, 35 Cal. Rptr. 516 (1963) (defendant caught with a narcotics kit from which microscopic scrapings of material containing heroin were taken), and in *Watson v. State*, 88 Nev. 196, 495 P.2d 365 (1972) (parent convicted of possessing 17 marijuana seeds found on floor of daughters' room), present instances where the element of knowing possession comes rightly into question. And yet both these instances can be dealt with under federal law without resorting to the "usable quantity" doctrine. In *Watson v. State, supra*, the defendant testified that he did not know what marijuana looked like and never had had any. The only evidence to connect him to the seeds was the fact that they were found in his house. Clearly, as the Nevada Supreme Court noted, there was insufficient evidence to show that he *knowingly* possessed the seeds. An adequate instruction on what inferences with regard to a defendant's knowing possession can be drawn from the fact of physical possession of a controlled substance in such circumstances solves the problem without reference to the "usable quantity" doctrine. Similar-

5. The legislative history mentions possession "by an individual for his own use" but this wording is included in the House Report to distinguish mere possession from possession with intent to manufacture, distribute or dispense controlled substances illegally. The House Report on P.L. 91–513, The Drug Abuse Control Act, states in part:

> The bill also provides that illegal possession of controlled drugs by an individual for his own use is a misdemeanor, with a sentence of up to 1 year imprisonment and a fine of not more than $5,000 or both. The possession involved here is possession for one's own use; possession with intent to manufacture, distribute, or dispense controlled substances is subject to the penalties prescribed for the act of manufacture, distri-

bution, or dispensing itself. The quantity of a drug found in the possession of a person, of course, bears upon the question of whether or not his possession is for his own use, or is for the purpose of illicit transactions involving others, for which much more severe penalties are provided.

H.R.Rep.No.91–1444, 91st Cong., 1st Sess. (1969), U.S.Code Cong. & Admin.News 1970, pp. 4566, 4577.

No mention is made of the legal significance of possession of minute amounts. This would lead one to conclude that Congress saw only two categories of possession, possession of small amounts for personal use and possession of larger amounts indicative of an intent to sell or manufacture.

ly, the defendants in *Aguilar, supra*, admitted their possession of a narcotics kit but pleaded innocence to possession of any drugs. Microscopic analysis, however, revealed traces of heroin on the narcotics kits. The California Appellate Court wrote:

> It is not scientific measurement and detection which is the ultimate test of the known possession of a narcotic, but rather the awareness of the defendant of the presence of the narcotic.

223 Cal.App.2d at 122, 35 Cal.Rptr. at 519.[6]

■ We conclude, then, that the "usable quantity" doctrine is neither applicable to nor appropriate for use in connection with 21 U.S.C. § 844(a).[7]

■ In regard to the present case, then, the instruction of which the petitioner complains is permissible.[8] The instruction which is set out in Devitt & Blackmar, Federal Jury Practice and Instructions, § 44.12 (1970), provides in part:

> The evidence in this case need not establish that the amount or quantity of heroin was as alleged in the indictment, but only that some *measurable* amount of a heroin drug was in fact the subject of the acts charged in the indictment . . . (emphasis added).

The "measurable amount" standard contained in this instruction provides a bright-line, objective test for narcotics cases. This contrasts markedly with the uncertain and subjective standard that the usable quantity doctrine would provide. The instruction given in this case together with other instructions regarding inferences which can be drawn from the fact of possession sets up a fair and consistent standard for a jury to apply in narcotics cases.

The conviction is affirmed.

Affirmed.

---

**6.** A possible third consideration in cases like these is the injustice of sentencing someone to five or ten years in prison on a felony conviction for possessing only traces of a narcotic. This seemed to influence the court in *Aguilar, supra,* as it noted the fact that possession of the narcotic was a felony while possession of narcotic paraphernalia (to which the defendants freely admitted guilt) was only a misdemeanor. 223 Cal.App.2d at 120, 35 Cal.Rptr. at 517. Under federal law, however, such a consideration is not present because possession of small amounts is classified as a misdemeanor. 21 U.S.C. § 844(a).

**7.** In the present case, even if we were to hold the usable quantity doctrine applicable to 21 U.S.C. § 844(a), the petitioner would still not fare well. As was shown at trial, two packets of heroin of 295 milligrams and 106 milligrams respectively were found in the petitioner's purse. The jury could fairly infer that the petitioner knew these packets were there. Furthermore, the amounts in question were far greater than mere microscopic traces. The government's chemist testified that from his experience with analyzing heroin, these amounts constituted at least a dosage unit. Other cases, as well, have held much smaller amounts of heroin usable, *see e. g., State v. Moreno*, 92 Ariz. 116, 374 P.2d 872 (1962) (.2 milligrams of heroin held to be sufficient for use as a narcotic), and *cf. People v. Stewart*, 52 Mich.App. 477, 217 N.W.2d 894 (1974) (suggests that 12 milligrams of pure heroin is a normal dosage unit).

**8.** The petitioner also suggests that she was intimidated from calling a witness who would testify as to whether or not this was a usable amount, because of the trial judge's insistence on the measurable quantity standard. The record, however, does not support this contention. As a matter of fact, the trial judge even though he was eager to finish up the trial in one day gave the defense an overnight continuance to allow it to procure the witness. For some unexplained reason the defense the next day, decided not to call the witness. Any other contentions that the trial was prejudiced by the judge's belief that the "measurable quantity" standard was the applicable law, are deemed meritless because we hold that such standard is the applicable law.