[S.F. No. 22953. In Bank. Mar. 5, 1973.]

FLEETA DRUMGO, Petitioner, v.
THE SUPERIOR COURT OF MARIN COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

931

## Counsel

Richard H. Breiner for Petitioner.

Ben Margolis, William B. Murrish, Charles C. Marson, Peter E. Sheehan, Floyd J. Silliman, William Bennett Turner, Julian J. Fowles, William R. Higham, Public Defender (Contra Costa), John E. Thorne, Gordon Gaines, Peter Tague, Arthur W. Simon, Mario Obledo and Alfred H. Sigman as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., and Herbert L. Ashby, Chief Assistant Attorneys General, William E. James, and Doris H. Maier, Assistant Attorneys General, Joyce F. Nedde, Derald E. Granberg and Herbert F. Wilkinson, Deputy Attorneys General, for Real Party in Interest.

## OPINION

**WRIGHT, C. J.**—Fleeta Drumgo petitions for a writ of prohibition to restrain further proceedings in a pending criminal action wherein he is charged with multiple offenses and for a writ of mandate compelling the respondent court to vacate its order denying his motion to relieve his appointed counsel and to appoint as assigned counsel an attorney personally selected by petitioner.

Petitioner, an inmate at San Quentin Prison, is charged by indictment with five counts of murder (Pen. Code, § 187),[1] one count of conspiracy to commit murder (§§ 182, 187), and one count of assault while serving a state prison sentence for less than life (§ 4501). Five other inmates are charged with the same murder counts and the count of conspiracy. Each of the other inmates is charged with additional felony counts. The trial court, determining that conflicts existed among the codefendants, appointed the public defender to represent one of them and separate counsel to represent each of the others.[2] This proceeding concerns only the appointment of counsel to represent petitioner.

Petitioner first appeared in pretrial proceedings before respondent court on October 5, 1971. He was not then represented by counsel. In response to his request to consult with numerous members of the bar, he was allowed to confer with an attorney who then represented him in proceed-

---

[1] Unless otherwise indicated, all statutory references are to sections of the Penal Code.

[2] The unquestioned right of indigent defendants to the effective assistance of competent counsel (see *Gideon* v. *Wainwright* (1963) 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733]) is accomplished in California by the statutory provision for the assignment of counsel by the court. (§ 987.) In several jurisdictions, the public defender offices bear the principal burden of fulfilling the state's obligation. (Gov. Code, § 27700 et seq.) Provision is made for the compensation of counsel, other than the public defender, assigned when "there is no public defender" or "the court finds that because of conflict of interest or other reasons the public defender has properly refused to represent the person accused." (§ 987.2, subd. (a).)

ings in another county. On October 15 he sought and was granted permission to consult another attorney, Richard A. Hodge. On October 29, petitioner, an indigent, requested the appointment of Mr. Hodge, who advised the court that he was ready, willing and able to represent petitioner. The court rejected the request, appointed Richard H. Breiner, a local attorney, solicited a memorandum of points and authorities from Mr. Hodge and stated it would change the appointment if it concluded that it had acted in error. Petitioner purported to refuse the services of Mr. Breiner.

On November 18, petitioner moved to have Mr. Breiner relieved and Mr. Hodge appointed because: "I know Attorney Hodge, and I have consulted with him concerning this case; I respect the competence and ability of Attorney Hodge and have confidence in him as my attorney; because of the foregoing, I will cooperate with Attorney Hodge and heed his advice to me as my attorney. [¶] I do not want Attorney Breiner to represent me since I do not know him; I do not have the confidence in him as is vital in a capital case, such as this case; and I will not cooperate with him." The motion was denied on November 24. A motion for reconsideration was denied on December 14 and the court simultaneously gave its reasons for the refusal: the court knew Mr. Breiner to be competent, he had previously served as court-appointed counsel, and the matters asserted in support of the motion did not provide a legal basis for termination of the appointment. This proceeding ensued.

The People urge that mandate is not an appropriate remedy. "It is neither novel nor inappropriate . . . for this court to review through a mandate proceeding a pretrial order which is likely to substantially affect a defendant's right to a fair trial." (*Maine* v. *Superior Court* (1968) 68 Cal.2d 375, 379 [66 Cal.Rptr. 724, 438 P.2d 372].) ▇ Orders concerning the designation or substitution of appointed counsel are subject to such review. (*Smith* v. *Superior Court* (1968) 68 Cal.2d 547, 558 [68 Cal.Rptr. 1, 440 P.2d 65].) In *Smith* we explored the pitfalls facing a judge seeking to remove, over the defendant's objection, a counsel already appointed. Here we are confronted with the refusal of the trial court to appoint originally or to substitute a particular attorney requested by an indigent defendant. Mandate is a proper remedy when the trial court does not properly appoint or substitute counsel. As will be seen, however, petitioner has not met the heavy burden imposed in stating a claim for relief cognizable on mandate.

Section 987 unequivocally provides that counsel is to be *assigned by the court* in case a defendant is unable to employ counsel. There is no sug-

gestion therein that an indigent defendant may force selection of a particular attorney who, in the defendant's opinion, can provide the best representation. ■ We have repeatedly held that constitutional and statutory guarantees are not violated by the appointment of an attorney other than the one requested by defendant. (*People* v. *Hughes* (1961) 57 Cal.2d 89, 98-99 [17 Cal.Rptr. 617, 367 P.2d 33]; see, e.g., *People* v. *Aikins* (1969) 70 Cal.2d 369, 378 [74 Cal.Rptr. 882, 450 P.2d 258]; *People* v. *Massie* (1967) 66 Cal.2d 899, 910 [59 Cal.Rptr. 733, 428 P.2d 869]. See also *People* v. *Taylor* (1968) 259 Cal.App.2d 448, 450-451 [66 Cal.Rptr. 514].) The additional factor that requested counsel has indicated his willingness and availability to act does not raise any constitutional compulsion requiring his appointment. Our established rule conforms with those of the federal courts (e.g., *Brown* v. *Craven* (9th Cir. 1970) 424 F.2d 1166, 1170; *United States* v. *Burkeen* (6th Cir. 1966) 355 F.2d 241, 245; *Tibbett* v. *Hand* (10th Cir. 1961) 294 F.2d 68, 73; *United States* ex rel. *Mitchell* v. *Thompson* (S.D.N.Y. 1944) 56 F.Supp. 683, 688-689) and, at least absent a statute expressly providing to the contrary, of our sister state courts (e.g., *Martinez* v. *People* (1971) 173 Colo. 515, 519 [480 P.2d 843]; *People* v. *Gray* (1965) 33 Ill.2d 349, 353-355 [211 N.E.2d 369]; *State* v. *Fagerstrom* (1970) 286 Minn. 295, 299 [176 N.W.2d 261]; *Rahhal* v. *State* (1971) 52 Wis.2d 144, 147-148 [187 N.W.2d 800]). (See generally ABA Project on Min. Standards for Crim. Justice, Providing Defense Services (Tent. Draft 1967) § 2.3, com. (b), pp. 29-30.)

Petitioner seeks to distinguish the established California authority as involving situations where the denial of particular counsel was deemed justified either because the public defender was available, because the request for a specific attorney was first made at trial or was made late in pretrial proceedings. The services of the public defender in the instant case were deemed unavailable to petitioner and his requst for Mr. Hodge was first made before counsel was appointed. We do not perceive, however, that these are relevant factors compelling an exception to such a widely recognized rule. Federal trial courts, indeed, have adopted rules expressly providing that under similar circumstances defendants have no right or power to select an attorney from the available panel. (See *Davis* v. *Stevens* (S.D.N.Y. 1971) 326 F.Supp. 1182, 1184.) If, as is the case, an indigent defendant who is necessarily represented by the public defender may not select the particular deputy who will represent him (*People* v. *Stroble* (1951) 36 Cal.2d 615, 629 [226 P.2d 330]), then an indigent defendant for whom assigned counsel must be appointed should likewise not be entitled to be represented by a particular attorney.

■ The appointment of counsel to represent an indigent rests, as

always, in the sound discretion of the trial court, and there can be no abuse of that discretion when the court appoints competent counsel who is uncommitted to any position or interest which would conflict with providing an effective defense.[3] ■ The record fails to demonstrate or even to suggest in any way an abuse of discretion based on Mr. Breiner's competency. The record shows only that at the time of the appointment petitioner purported to reject Mr. Breiner's services. It does not appear that petitioner had even consulted with Mr. Breiner prior to such rejection. In an affidavit filed three weeks later in conjunction with the motion for substitution, petitioner claimed that he lacked confidence in and would not cooperate with Mr. Breiner. Petitioner had every opportunity to explain his lack of confidence. (See *People* v. *Marsden* (1970) 2 Cal.3d 118, 123-126 [84 Cal.Rptr. 156, 465 P.2d 44]; *Brown* v. *Craven, supra,* 424 F.2d 1166, 1169-1170.) The only justification ever suggested, a lack of any knowledge of Mr. Breiner, is patently inadequate. A clear inference to be drawn from the record is that petitioner would have made similar claims about any lawyer except Mr. Hodge. There is no claim of disagreement as to trial tactics or that Mr. Breiner refused or was unable to act after the appointment. No basis for the lack of confidence and refusal of services, other than lack of a prior relationship, has ever been given. Under these circumstances, petitioner's claims are most unconvincing and fall far short of demonstrating an abuse of discretion by the trial court.

The performance of Mr. Breiner to date demonstrates competence of the highest level.[4] Even were there evidence of a disagreement as to trial tactics, however, substitution of counsel would not necessarily be required. (*People* v. *Williams* (1970) 2 Cal.3d 894, 905-906 [88 Cal.Rptr. 208, 471 P.2d 1008]; see *People* v. *Floyd* (1970) 1 Cal.3d 694, 704-705 [83 Cal.Rptr. 608, 464 P.2d 64].) On rare occasions a disagreement as to tactics affecting some fundamental right "may signal a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel." (*People* v. *Robles* (1970) 2 Cal.3d 205, 215 [85 Cal.Rptr. 166, 466 P.2d 710].) But we are not here confronted with such a case.

Petitioner has established only that he has announced that he will refuse to cooperate with appointed counsel in the preparation of a defense. Such

---

[3]We do not discourage the practice of soliciting the views of both defendant and counsel before making an appointment for the defense of an indigent, but the weight to be accorded these views must, as the appointment itself, rest within the sound discretion of the trial court.

[4]We suggest no criticism of Mr. Hodge. The recitation of qualifications in the record indicates that he, too, is a competent attorney.

circumstance does not create a situation which entitles an indigent defendant to the appointment or substitution of a particular attorney selected by defendant. (See *People* v. *Floyd, supra,* 1 Cal.3d 694, 705.) We do not preclude, however, the substitution of Mr. Hodge or any other attorney in the event petitioner wishes to substitute counsel retained by him pursuant to such arrangements as he may be able to make.

The alternative writ of mandate is discharged and the petition for a peremptory writ denied.

McComb, J., Burke, J., and Sullivan, J., concurred.

**MOSK, J.**—I dissent.

The singular circumstances of this proceeding go farther than to pique one's curiosity; they clearly reveal an abuse of discretion. The indigent defendant, charged with multiple counts of murder and other offenses, requested the appointment of Richard A. Hodge as his attorney. Mr. Hodge, who has experience in trying murder cases, was and is willing to serve.[1] The court nevertheless declined to appoint Mr. Hodge and instead designated Richard H. Breiner as counsel. Mr. Breiner, though unquestionably an able advocate, has never tried a murder case, and expressed reluctance to undertake a trial of the length here involved. Indeed, on behalf of the defendant he petitions for a writ of mandate.[2]

In the foregoing factual context, how is the administration of justice served by the dogged insistence that Mr. Breiner and not Mr. Hodge represent the defendant? Phrasing the question another way: what compelling state interest is served by denying appointment of the qualified and willing attorney of defendant's choice? The obvious answer is: none. While I concede that ordinarily if competent counsel is appointed to represent a defendant no constitutional issue emerges, I fail to see in these facts any lofty and immutable principle justifying the trial court in planting its feet in concrete instead of tolerantly exercising discretion and expediting a trial that is not only fair but gives the appearance of being fair.

The events which transpired in open court in the first instance are of

[1]Richard Hodge declared in an affidavit that he has practiced law seven years, two of which were as a deputy district attorney, and that he specializes in criminal law. He has tried two cases in which the defendant was charged with first degree murder and one case of attempted murder. He has also tried cases involving defendants who were prisoners in state penal institutions.

[2]We are here concerned with the rights of a criminal defendant. Therefore, although Drumgo is a *petitioner* in this proceeding, for literary convenience I shall refer to him as the *defendant.*

some significance. The trial judge indicated that he had appointed separate attorneys for each of the other defendants and then, addressing this defendant, inquired: "I will ask you at this time do you have your attorney to represent you in this case?" The defendant asked that Richard Hodge, who was also present in court, be appointed as his attorney. To that the trial court replied: "Thank you. All right, you do not have an attorney that you have retained yourself or *who has agreed to represent you?"* (Italics added.) Mr. Hodge then advised the court that he was an attorney who agreed to represent the defendant and asserted that he was competent to do so. Over defendant's and Mr. Hodge's objections the court nevertheless proceeded to appoint Mr. Breiner, who had not previously been requested by the court to accept such an appointment and who was not before the court on that day.

Justice Douglas recently wrote, "The starting point of a decision usually indicates the result." (*EPA* v. *Mink* (1973) 410 U.S. 73, 105 [35 L.Ed.2d 119, 142, 93 S.Ct. 827] (dissenting opinion).) In this case mere recitation of the facts points unerringly to what the result should be.

Contrary to the opinion of the majority, there is no cited authority which compels their conclusion. Indeed, the cases upon which they rely are not apposite to the narrow issue before us. No one questions the right of the court to deny defendant the choice of private counsel if the public defender is available to defend him (*People* v. *Massie* (1967) 66 Cal.2d 899 [59 Cal.Rptr. 733, 428 P.2d 869]; *People* v. *Hughes* (1961) 57 Cal.2d 89 [17 Cal.Rptr. 617, 367 P.2d 33]; *People* v. *Taylor* (1968) 259 Cal. App.2d 448 [66 Cal.Rptr. 514]) or if the request for appointment comes at a time when it would of necessity cause a substantial delay in the proceedings (*People* v. *Aikens* (1969) 70 Cal.2d 369, 378 [74 Cal.Rptr. 882, 450 P.2d 258]; *People* v. *Stewart* (1966) 240 Cal.App.2d 1, 6 [50 Cal. Rptr. 26]; *United States* v. *Thompson* (S.D.N.Y. 1944) 56 F.Supp. 683) or if a change is made subsequent to an original appointment by the court (*People* v. *Stroble* (1951) 36 Cal.2d 615, 629 [226 P.2d 330], affd. 343 U.S. 181 [96 L.Ed. 872, 72 S.Ct. 599]; but see *Smith* v. *Superior Court* (1968) 68 Cal.2d 547 [68 Cal.Rptr. 1, 440 P.2d 65]) or if the chosen attorney is not readily available to undertake the defense (*Tibbett* v. *Hand* (10th Cir. 1961) 294 F.2d 68; *People* v. *Aikens, supra; People* v. *Manchetti* (1946) 29 Cal.2d 452, 458 [175 P.2d 533]). Nor is the majority's reliance on other federal authority well advised. *Brown* v. *Craven* (9th Cir. 1970) 424 F.2d 1166, found an abuse of discretion when the

trial court appointed a deputy public defender in whom an indigent defendant had lost confidence. *United States* v. *Burkeen* (6th Cir. 1966) 355 F.2d 241, held a defendant not entitled to appointment of his own counsel after he had proceeded to defend himself. *Davis* v. *Stevens* (S.D.N.Y. 1971) 326 F.Supp. 1182, involved selection of counsel from a panel which would have disturbed a systematic rotational program.

The majority also refer to the American Bar Association Project on Minimum Standards for Criminal Justice, Providing Defense Services (Tent. Draft 1967) section 2.3, commentary (b), pages 29-30. While the ABA report expresses a preference for a strict rotational system for the appointment of counsel to assure "the even-handed distribution of assignments," it also declares that where there is no rotational system, as here, "permitting the defendant to select the lawyer he wishes to represent him is one method for increasing his confidence that he is being provided competent counsel and of providing as early as possible the same conditions for the professional relation that obtain when counsel is retained by a defendant of means." Moreover, the ABA report states that *"Ad hoc* appointment of counsel, lacking any predetermined rationale, is inadequate" (*id.* at p. 4), and asserts "This view is substantiated in the survey of state practice, which indicates that the worst inequities, to both the defendant and the bar, occur in those areas where no organized or systematic approach to the problem has been taken." (*Id.* at p. 15.) The goal, states the ABA, is "to provide counsel who have the same freedom of action as the lawyer whom the person with sufficient means can retain. Inequalities . . . are quickly perceived by those who are being provided representation and may encourage cynicism toward the justness of the legal system and, ultimately of society itself." (*Id.* at p. 19.)

In the instant case, the appointed attorney was selected by the judge with no stated or predetermined rationale, in the absence of a programmed system of selection, and without acceding to defendant's request for a ready, willing and able counsel. Given these facts, it is clear that the authors of the ABA report on defense services would criticize rather than approve the trial court's order.

Effective advocacy involves more than vigor, experience and familiarity with the law. The attorney-client relationship contemplates trust and mutual cooperation, particularly when the attorney is defending the client's liberty. (*Smith* v. *Superior Court* (1968) *supra,* 68 Cal.2d 547, 561.) The desirability of a relationship of trust and confidence between an indigent defendant and his attorney has been elevated to indispensability as a result of this court's recent decision in *People* v. *Sharp* (1972) 7 Cal.3d 448

[103 Cal.Rptr. 233, 499 P.2d 489], holding that a defendant has no constitutional right to defend *pro se* at trial. Prior thereto an indigent defendant had three choices open to him if he lacked confidence in his appointed counsel and the judge refused to designate an attorney of his choice: he could permit the attorney to represent him and abjectly be bound by crucial trial decisions with which he might disagree (*People* v. *Hill* (1967) 67 Cal.2d 105, 114 [60 Cal.Rptr. 234, 429 P.2d 586]; *People* v. *Darling* (1962) 58 Cal.2d 15, 19 [22 Cal.Rptr. 484, 372 P.2d 316]); he could dismiss the attorney and proceed to represent himself (*People* v. *Williams* (1970) 2 Cal.3d 894, 908 [88 Cal.Rptr. 208, 471 P.2d 1008]); or he could in unusual circumstances dismiss the attorney from responsibility for the case and represent himself but have counsel standing by for advice (*People* v. *Mattson* (1959) 51 Cal.2d 777 [336 P.2d 937]). After *Sharp* an indigent defendant has no choice as a matter of right: he must be represented by the appointed counsel. Thus in this case, the defendant must proceed with the appointed attorney, in place of other counsel in whom he has expressed confidence; as a result he will be compelled to acquiesce in subsequent trial tactics which he may find objectionable. (*People* v. *Williams, supra,* 2 Cal.3d at p. 905; *People* v. *Nailor* (1966) 240 Cal. App.2d 489, 494 [49 Cal.Rptr. 616].) It seems inevitable that this procedure will create serious problems in the administration of justice throughout the trial and future appeals, if any.

The majority refer to defendant's refusal to cooperate with Mr. Breiner; they point out he has had no actual disagreement as to trial tactics with counsel and has failed to indicate any basis for lack of confidence other than absence of a prior relationship. Whether defendant's conduct is justified or not, these circumstances arose *after* the court's refusal to appoint his counsel of choice. Defendant's intransigence subsequent to the trial court's abuse of discretion is irrelevant in this proceeding.

The Attorney General, employing artful alliteration, also alludes to the "initial indigent implacability." It is possible, of course, that some cunning or disturbed defendants will become implacable in irrational insistence upon counsel of their choice. Courts can deal with such circumstances when they arise. There is nothing in this record to indicate the request of the defendant and the willingness of Mr. Hodge to serve were other than in good faith.

There is an implication in these proceedings that because defendant is indigent and counsel is appointed, the need for trust and confidence between attorney and client is somewhat less significant. We firmly rejected a similar implication in *Smith* v. *Superior Court, supra,* 68 Cal.2d at pages

561-562: "A superficial response is that the defendant does not pay his fee, and hence has no ground to complain as long as the attorney currently handling his case is competent. But the attorney-client relationship is not that elementary: it involves not just the casual assistance of a member of the bar, but an intimate process of consultation and planning which culminates in a state of trust and confidence between the client and his attorney. This is particularly essential, of course, when the attorney is defending the client's life or liberty. Furthermore, the relationship is independent of the source of compensation, for an attorney's responsibility is to the person he has undertaken to represent rather than to the individual or agency which pays for the service."

Several amici curiae, in briefs replete with quotations from *Powell* v. *Alabama* (1932) 287 U.S. 45 [77 L.Ed. 158, 53 S.Ct. 55, 84 A.L.R. 527], *Gideon* v. *Wainwright* (1963) 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733], *Tehan* v. *Shott* (1966) 382 U.S. 406 [15 L.Ed.2d 453, 86 S.Ct. 459], and similar landmark authorities, argue that indigent defendants have an unqualified right to select their counsel. While it might be desirable to recognize such a right as an abstract principle, its application in the real world of criminal courts procedure is fraught with complications. Many a defendant charged with a commonplace violation, in the dreary solitude of his jail cell, contemplates his case as a cause celebre deserving representation by a Clarence Darrow or a Jerry Geisler. Understandably he would choose counsel who is the most celebrated, the best publicized, the more politically oriented, or counsel who may subtly solicit the assignment, regardless of four factors, inter alia, which the appointing judge must consider: the necessity for appointment of private counsel, qualifications of the preferred counsel for the specific case at hand, his availability for a prompt trial, and his willingness to serve for the regrettably meager compensation permitted by the public treasury.

For present purposes I agree with the conclusion of Justice Bray in the opinion he prepared for the Court of Appeal in this case (103 Cal.Rptr. 100, 106), concurred in by Presiding Justice Devine and Justice Rattigan: "[A]n indigent defendant is not entitled as a matter of law to the appointment of a willing attorney of defendant's own choice, nor as a matter of law may such appointment be denied. The totality of the circumstances applicable to the situation at the time of the defendant's request is the criterion upon which the court's discretion should rest." One caveat might be added. As we said in *People* v. *Crovedi* (1966) 65 Cal.2d 199, 208 [53 Cal.Rptr. 284, 417 P.2d 868], the cases "demonstrate a conviction that the state should keep to a necessary minimum its interference with the individual's desire to defend himself in whatever manner he deems best

. . . [yielding] only when it will result in significant prejudice to the defendant himself or in a disruption of the orderly processes of justice unreasonable under the circumstances of the particular case."

Under the circumstances revealed by this record it seems abundantly clear that the court erroneously denied defendant the appointment of the counsel he requested. I would issue the writ.

Tobriner, J., concurred.

Petitioner's application for a rehearing was denied April 4, 1973. Tobriner, J., and Mosk, J., were of the opinion that the application should be granted.