[Crim. No. 4057. Fifth Dist. Nov. 26, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN VERNER PENROD, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Ezra Hendon, Chief Assistant State Public Defender, and Laurance S. Smith, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Willard F. Jones and William George Prahl, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

HANSON (P. D.), J.—This is an appeal from a judgment of conviction, after a jury trial, of robbery (Pen. Code, § 211), being armed with a firearm (Pen. Code, § 12022, subd. (a)), and auto theft (Veh. Code, § 10851).

The only argument presented is that the trial court abused its discretion by denying a pretrial motion to relieve the public defender as counsel on the basis of inadequate representation and to appoint private counsel. Appellant contends that the trial court did not examine the merits of (1) a change of venue motion, (2) a request to be relocated for the purpose of interviewing witnesses, and (3) a complaint of counsel's inadequate preparation.

At about 10:30 a.m. on July 5, 1978, Suzanne Love parked her dark blue Mustang in a parking lot located about a block away from the Modesto Coin Center; she reported her car missing at 2:30 p.m.

At approximately 2:45 p.m. on July 5, two men with handkerchiefs over their faces robbed the Modesto Coin Center. Sales clerk Stanley Doub, who was in the store's back room, heard one of the men say, "This is it"; Doub pushed the alarm button and walked to the front counter. The older of the two men held a gun on Doub and demanded cash. Although the store safe was empty because the money had been taken to the bank, Doub opened the cash drawer, which was emptied by the older man. Doub was instructed to lie on the floor while the younger man sorted through coins in the back room. Connie Swain, an

owner, returned from the bank and saw two men in the back room and then observed Doub lying on the floor. Swain repushed the alarm, and the older man attempted to coax her into the back room. She managed to get away from the area and the two men fled to a dark blue Mustang parked outside the store. Swain's son arrived and she shouted for him to watch the Mustang.

As the two men entered the Mustang, Swain heard someone yell, "Police" and instruct the two men not to move. One of the arriving police officers said that four or five shots were then fired from the passenger side of the Mustang. Fire was returned by the officers. Swain's son drove his car in back of the Mustang, which backed into it, lurched forward, and then hit a parked car. After the Mustang stopped, appellant, who had been driving and was wounded, rolled out of the car and said, "I've had enough." Appellant and a passenger, Forest Tucker, were subsequently arrested.

An examination of the Mustang showed that it had been hot-wired. Connie Swain identified bags of coin found in the Mustang as belonging to the Modesto Coin Center. Suzanne Love identified the Mustang found at the store as her car, although she denied hot-wiring it or leaving coins in it. The windows were shattered and riddled with bullet holes when she retrieved the car at the police station.

Forest Tucker was the principal witness for the defense. Tucker testified that he lent $1,000 to appellant in May 1978 and that on July 2 or 3, Tucker met with appellant, informing him that he would return in a few days. Tucker picked up appellant on July 5, and did not tell appellant of the decision to commit a robbery. While driving, Tucker saw the coin shop and decided to rob it.

Tucker entered a nearby parking lot, told appellant he was looking for friends and that one of his friends had a car in the lot which would not start. Tucker left appellant in his car and proceeded to hot-wire the Mustang. Upon Tucker's request, appellant drove Tucker's car to the coin-store shopping center. Appellant then followed Tucker's instructions to drive the Mustang while Tucker, sitting as a passenger in the stolen car, looked for his friends. Tucker finally told appellant to park in front of the coin store and informed him of his intention to rob it. He showed a gun to appellant and threatened appellant that he and his girl friend would get hurt unless appellant complied with his request.

In rebuttal, the prosecution presented a tape-recorded conversation between Tucker and his girl friend wherein Tucker claimed the gun belonged to appellant. In response to this tape, Tucker said that he lied in order to minimize his responsibility for the crime in front of his girl friend to "gain [a] better relationship with her."

At the hearing of the pretrial motion to relieve the public defender appointed as counsel, appellant and another member of the public defender's office were present. The following grounds for the substitution motion were specified by appellant: "My reason for asking for other counsel is that Mr. Hollingsworth and I do not agree on the defense of my case. And I have no confidence in his or the Public Defender's office to see that I get a fair trial.

"In support of my motion for the appointment of private counsel to represent me, I would like to bring to the Court's attention the following:

"Number one: The case has received an extraordinary amount of publicity in the news media, including an editorial and letters to the editor. And I have asked my attorney, Mr. Hollingsworth, to make a motion for change of venue to some other county for trial. And he has refused to do so.

"I have asked him that he make a motion to the Court that he and I be allowed to talk to my witnesses at some place that's not monitored, neither the County Jail or the courthouse; that by testimony of such witnesses could be determined that said—

"THE COURT: I didn't understand. What was that last one?

"THE DEFENDANT: That testimony of such witnesses could be determined. You understand what that is?

"THE COURT: Do you want to explain it to me?

"THE DEFENDANT: Let me finish reading this. I'll explain it.

"That said witnesses live in Sacramento, California. And it has been impossible for me to privately confer with prospective witnesses in the jail because every avenue of communication is censored, including the

removal of parts or all of my letters. And I have tried to write to prospective witnesses, which the jail censors, this in spite of the fact that I have not authorized the jail to censor my mail.

"Number three: That Mr. Hollingsworth, in acting as my counsel, in the employment of the Public Defender's office, has so many other cases assigned to him that he has not adequately prepared my defense. In fact, my counsel is now on vacation with my trial date only a week away.

"For the above-stated reasons, I ask that the Public Defender's office, Mr. Hollingsworth, Assistant Public Defender, be discharged and that the Court appoint private counsel and that a continuance of one month be granted to prepare my defense." The court allowed Mr. Cole, public defender appearing at the hearing, to respond to appellant's allegations:

"THE COURT: Mr. Cole?

"MR. COLE: Yes, Your Honor. I'm familiar with his file. I've discussed it with Mr. Hollingsworth at various stages of the proceedings.

"We did consider filing a change of venue motion and discarded that as not meritorious under the facts of this case.

"Mr. Hollingsworth discussed the fact of filing a motion to require the jail to provide a place so that the Defendant and Mr. Hollingsworth and all the witnesses could be alone to discuss their testimony. I told him I was not aware of the authority for any such motion being made. As long as the Defendant was in custody, I did not feel it was an appropriate motion to make.

"And as to the last point, Mr. Hollingsworth has had adequate time to spend with this case. And although he is busy, he is a trained lawyer, well experienced and extremely capable.

"THE COURT: One would hope that all of the lawyers in your office are busy. If that is not the case, one would wonder how you can justify having the number of attorneys you have in your office if they're not all busy.

"However, the question is as to whether or not Mr. Hollingsworth is so busy that he would neglect this particular case because of being so

busy in other cases that he couldn't devote the proper amount of time and energy and effort and legal skill to the defense of Mr. Penrod.

"MR. COLE: That is not the case, Your Honor. Mr. Hollingsworth has not been that busy. We are always busy. And we stay busy." The court then made its ruling, as follows:

"THE COURT: All right. Anything further to present, Mr. Penrod?

"THE DEFENDANT: No, not at this time.

"THE COURT: All right. The Court has carefully considered your motion to discharge Mr. Hollingsworth and to appoint other counsel to represent you. The Court feels that there has not been a sufficient showing to warrant that order being made by the Court.

"Mr. Hollingsworth is a competent trial lawyer and an experienced trial lawyer. And the Court notes from the file in this case that there's been a number of motions made. Overall, Mr. Hollingsworth, no showing that he is not devoting the time and effort and legal skill which is proper and necessary in the defense of your case.

"Your motion is denied. Defendant is remanded to the custody of the Sheriff."

Appellant contends that the trial court abused its discretion in denying appellant's motion to substitute an attorney without asking the reasons for appellant's request. (*People* v. *Chavez* (1980) 26 Cal.3d 334, 347 [161 Cal.Rptr. 762, 605 P.2d 401]; *People* v. *Marsden* (1970) 2 Cal.3d 118, 123-124 [84 Cal.Rptr. 156, 465 P.2d 44].) ■ Under the *Marsden* case the court, in order to make a judicial determination, has an obligation to inquire into the defendant's reasons for requesting substitution. (*People* v. *Green* (1971) 15 Cal.App.3d 524, 527 [93 Cal.Rptr. 84].) The transcript shows that the trial judge made inquiry and listened to appellant's complaints. We hold that nothing more was required of the court as far as recognizing appellant's dissatisfaction.

■ However, at the hearing on the motion to substitute, the public defender's office was represented by an attorney other than the lawyer assigned and primarily responsible for the defense of appellant. In *People* v. *Munoz* (1974) 41 Cal.App.3d 62, 66 [115 Cal.Rptr. 726], the

statement is made that the court should inquire "into the state of mind of the court-appointed attorney" to find "in what particulars the attorney was not providing appellant with a competent defense. . . ." Does this phrase *require* that the assigned attorney rather than a legal colleague must respond to appellant's allegations? Not necessarily; here, it was perfectly proper that Mr. Cole of the public defender's office be before the court for purposes of the hearing. *Munoz* does not mandate that the trial judge question an assigned attorney every time a defendant asks for a substitution.

Recently, our decision in *Munoz* has been attacked by other courts. (See *People* v. *Terrill* (1979) 98 Cal.App.3d 291, 299, 301 [159 Cal.Rptr. 360]; *People* v. *Huffman* (1977) 71 Cal.App.3d 63, 80-81 [139 Cal.Rptr. 264].)[1] These cases misconstrue the thrust of our opinion in *Munoz* and mistakenly interpret the scope of the *Munoz* inquiry into the attorney's state of mind.

We point out that *People* v. *Munoz, supra*, 41 Cal.App.3d 62, 66, relied upon *Drumgo* v. *Superior Court* (1973) 8 Cal.3d 930 [106 Cal.Rptr. 631, 506 P.2d 1007, 66 A.L.R.3d 984] (cert. den. (1973) 414 U.S. 979 [38 L.Ed.2d 223, 94 S.Ct. 272]), and Chief Justice Wright's statement in the *Drumgo* case that there can be no abuse of discretion in the court's appointment of "competent counsel who is uncommitted to any position or interest which would conflict with providing an effective defense." (8 Cal.3d at p. 935, fn. omitted.) The *Munoz* case was concerned with defendant's statement to the judge that his counsel *did not want to defend him* or fight the case because court-appointed counsel thought defendant was guilty and did not have a "chance." (41

---

[1]Criticism is found in the *Huffman* opinion and reiterated by the *Terrill* court. Presiding Justice Gardner, speaking for the Fourth District in *Huffman*, stated: "When a trial attorney has a game plan and the trial court asks him what it is, the answer is liable to be, and probably should be, 'Frankly, your Honor, with all due respect, it is none of your business.' Ours is still an adversary system. In this case, it probably would not have made any difference but it is not difficult to visualize a situation in which, if defense counsel has to show his hand, it would clearly enure to the benefit of the prosecution. With all due respect to the authors of *Munoz* and the majority in *Groce*, they simply exhibit a lack of appreciation of the realities of life on the trial level. The purpose of *Marsden* was to assure the defendant of a fair trial—not to make a pretty record for the appellate court. A trial court's duties are fully performed when it has given the defendant every opportunity to present and substantiate his specific charges. [Citations.] Of course, there is nothing wrong with asking defense counsel if he has any comments at the time charges are being made against him. But making the kind of inquiry of defense counsel suggested by *Munoz* and *Groce* is simply improper." (71 Cal.App.3d at pp. 80-81.)

Cal.App.3d at p. 64.) ▮ *Munoz* makes clear that "if after appointment the attorney becomes convinced of his client's guilt to the extent that he is unable to defend the client vigorously and effectively at the trial, he should withdraw from the case." (*Id.*, at p. 66.) It was to this state of mind of the attorney the court in *Munoz* referred when it said the court should not deny appellant's request for a substitution of attorneys without "an inquiry into the state of mind of the court-appointed attorney . . . ." (*Ibid.*)

Our reliance on the case of *People v. Groce* (1971) 18 Cal.App.3d 292 [95 Cal.Rptr. 688] does not indicate that, under *Munoz*, the attorney must always be interrogated by the trial court. In *Groce*, a defendant charged with assault with a deadly weapon denied that one of the victims had been stabbed by him. Defendant informed the trial court that his court-appointed attorney had not presented a hospital report purportedly indicating that the victim was not wounded. The *Groce* court found that such information in the hospital report might constitute "a crucial piece of evidence" which could seriously impugn the credibility of the victim and other prosecution witnesses. (18 Cal. App.3d at p. 296.) The court held that, under this grave circumstance, the trial judge should have made a limited inquiry to find "whether the attorney made a knowledgeable election on the subject." (*Ibid.*)

The result in the *Groce* case coincides with our earlier disposition of serious *Marsden* and inadequate representation claims in *In re Miller* (1973) 33 Cal.App.3d 1005, 1014-1023 [109 Cal.Rptr. 648], wherein "the trial judge did not inquire into trial counsel's reasons for ignoring defendant's past medical history and did not make any attempt to understand the exact nature of the disagreement between the attorney and his client." (*Ibid.*)

▮ A review of *Munoz, Drumgo*, and *Groce*, reveals that inquiry into the attorney's state of mind is required only in those situations in which a satisfactory explanation for counsel's conduct or attitude toward his client is necessary in order to determine whether counsel can provide adequate representation.[2] Because many actions by a court-appointed attorney are justifiable, tactical decisions, it is not necessary for the trial judge to engage in a *Munoz* inquiry every time a defendant requests a substitution.

---

[2] We have recognized that "[i]neffective assistance of counsel is the underlying plank which supports the *Marsden* rule." (*People v. Maese* (1980) 105 Cal.App.3d 710, 723

Here, there is no indication that appellant was attacking counsel in the same manner as the defendants in *Munoz, Drumgo,* or *Groce.* Appellant disagreed with the trial preparation and strategy adopted by the public defender. This does not trigger any duty of inquiry by the trial court into the attorney's state of mind.

The trial court gave appellant an opportunity to explain his reasons for requesting substitution. After appellant and Deputy Public Defender Cole presented their arguments to the court, the judge asked: "All right. Anything further to present, Mr. Penrod?" To this, appellant replied: "No, not at this time." The record shows that appellant's request was given the judicial attention required under the holding in *Marsden.*[3]

As to the merits of the claimed lack of proper representation, we find that the complaints are not supported in the record.

First, appellant's counsel chose not to file a motion for change of venue only after fully investigating the possibility of its success. Counsel decided that a motion for change of venue was "not meritorious under the facts of this case." This analysis satisfies the requirement in *People* v. *Pope, supra,* 23 Cal.3d 412, 425, """to investigate carefully all defenses of fact and of law that may be available to the defendant...."", as quoted from *In re Williams* (1969) 1 Cal.3d 168, 175 [81 Cal.Rptr. 784, 460 P.2d 984].

Appellant stated to the judge that there had been an "extraordinary" amount of publicity in the news media, including an editorial and letters to the editor, which raised the reasonable likelihood he would not receive a fair trial. (*Frazier* v. *Superior Court* (1971) 5 Cal.3d 287, 294 [95 Cal.Rptr. 798, 486 P.2d 694].) The following factors are to be weighed before granting a request for change of venue: (1) the na-

[164 Cal.Rptr. 485].) Our Supreme Court in *Pope* requires a more detailed inquiry of most ineffective assistance claims through habeas corpus proceedings unless the appellate court "can conceive of no satisfactory explanation for counsel's omissions." (*People* v. *Pope* (1979) 23 Cal.3d 412, 428 [152 Cal.Rptr. 732, 590 P.2d 859]; accord *People* v. *Haynes* (1980) 104 Cal.App.3d 118, 123-125 [164 Cal.Rptr. 552]; *People* v. *Adams* (1980) 101 Cal.App.3d 791, 802 [162 Cal.Rptr. 62].) In like fashion, the *Munoz* inquiry becomes necessary only when a serious allegation by a defendant indicates that an attorney should provide an explanation for his conduct.

[3]Under the circumstances of this case, it was not improper for Deputy Public Defender Cole to appear with appellant at the *Marsden* hearing. Mr. Cole stated that he was familiar with appellant's case and had assisted Mr. Hollingsworth, the assigned attorney, in the preparation of the trial strategy; there was no prejudice.

ture, frequency and timing of the publicity; (2) the relative size of the community; (3) the status of the victim and the defendant in the community (popularity and prominence); (4) the extent of prospective jurors' awareness of the publicity; and (5) the nature of the crime. (*People* v. *Martinez* (1978) 82 Cal.App.3d 1, 13 [147 Cal.Rptr. 208]; *People* v. *Witt* (1975) 53 Cal.App.3d 154, 170-171 [125 Cal.Rptr. 653], cert. den. (1976) 425 U.S. 916 [47 L.Ed.2d 768, 96 S.Ct. 1518].) ■ With this law in mind, appellant's counsel (Hollingsworth and Cole) determined that such a motion would be fruitless. Many considerations must be examined on a request to change venue and there is no showing that the attorney's decision constitutes ineffective assistance of counsel.

Because it appears that trial counsel made an informed tactical choice after investigating the merits of the motion, the trial judge did not abuse his discretion in accepting the testimony of the public defender as to the diligence of appellant's counsel. (*People* v. *Carr* (1972) 8 Cal.3d 287, 299 [104 Cal.Rptr. 705, 502 P.2d 513]; *People* v. *Terrill, supra*, 98 Cal.App.3d 291, 299, 300; *People* v. *Huffman, supra*, 71 Cal.App.3d 63, 77-79.)

■ Second, it was not ineffective representation by counsel so as to *require* the substitution motion to be granted that counsel did not seek an order compelling the relocation of appellant, who was concerned that jail personnel might censor his communications to prospective witnesses or that any private conversations might be monitored. Cole told the trial court that he and assigned counsel "...discussed the fact of filing a motion to require the jail to provide a place so that the Defendant and Mr. Hollingsworth and all the witnesses could be alone to discuss their testimony. I told him I was not aware of the authority for any such motion being made. As long as the Defendant was in custody, I did not feel it was an appropriate motion to make."

Obviously, appointed counsel investigated the possibility of a relocation motion and found no legal authority supporting such a motion.

A long line of cases has established that there is no reasonable expectation of privacy in ordinary jailhouse conversations (*People* v. *Hill* (1974) 12 Cal.3d 731, 764-765 [117 Cal.Rptr. 393, 528 P.2d 1] (disapproved on other grounds in *People* v. *DeVaughn* (1977) 18 Cal.3d 889,

896, fn. 5 [135 Cal.Rptr. 786, 558 P.2d 872]); *North v. Superior Court* (1972) 8 Cal.3d 301, 308-309 [104 Cal.Rptr. 833, 502 P.2d 1305, 57 A.L.R.3d 155]; *Halpin v. Superior Court* (1972) 6 Cal.3d 885, 900, fn. 21 [101 Cal.Rptr. 375, 495 P.2d 1295], cert. den. (1972) 409 U.S. 982 [34 L.Ed.2d 246, 93 S.Ct. 318]) unless an attorney consults with the defendant in a room designed for that purpose (*People v. Lopez* (1963) 60 Cal.2d 223, 248 [32 Cal.Rptr. 424, 384 P.2d 16], cert. den. (1964) 375 U.S. 994 [11 L.Ed.2d 480, 84 S.Ct. 634]) or unless a defendant is lulled into believing that his jailhouse conversations will be private (*People v. Hill, supra*, 12 Cal.3d at pp. 764-765).[4] Except with regard to confidential conversations between a defendant and his attorney, religious adviser, or physician (Pen. Code, § 636), there is no obligation for state authorities to provide private facilities to an inmate for purposes of interviewing witnesses. Again, it would have been futile for appellant's court-appointed attorney to seek the type of motion desired by his client.

Also, prospective witnesses mentioned by appellant were from Sacramento, and witnesses desired by appellant, from Sacramento, in fact testified at trial. Witness Tucker was questioned by the defense and said that two or three other individuals were present when he and appellant negotiated a $1,000 loan at a Sacramento residence. Later, defense counsel questioned Cameron Maxwell Miller, who corroborated Tucker's testimony by stating that he was present in Sacramento and observed the loan transaction. Alibi witnesses were produced by the defense; additional evidence would have been cumulative on the loan transaction and appellant does not show that the testimony from the prospective witnesses would have been more favorable had he been able to interview them privately prior to trial. To the extent that appellant complained because he could not interview *other* individuals personally, the argument fails because the decision to call witnesses is ordinarily a trial tactic *within the attorney's control*. (*People v. Williams* (1970) 2 Cal.3d 894, 905 [88 Cal.Rptr. 208, 471 P.2d 1008], cert. den. (1971) 401 U.S. 919 [27 L.Ed.2d 821, 91 S.Ct. 903]; *People v. Maese, supra*, 105 Cal.App.3d 710, 724; *People v. Lindsey* (1978) 84 Cal.App.3d 851, 859 [149 Cal.Rptr. 47].) Because defendant had no right to interview witnesses privately and counsel brought out favorable testimony from

---

[4]Before the Supreme Court presently are cases considering the question of the right to privacy of jail inmates: *Robinson v. Superior Court* (Cal.App.) hearing granted (June 25, 1980) (S.F. 24185); *People v. Maxie* (Cal.App.) hearing granted (July 16, 1980) (Crim. 21556); *De Lancie v. Superior Court* (Cal.App.) hearing granted (Nov. 29, 1979) (S.F. 24095).

the witnesses, no abuse of discretion is shown based on appellant's second argument.

Finally, the record shows that the trial court did consider appellant's allegation of inadequate trial preparation by the court-appointed attorney. Cole pointed out that counsel did research appellant's request for a change-of-venue motion and to be relocated to interview witnesses. Cole specifically denied that Hollingsworth had not devoted "the proper amount of time and energy and effort and legal skill to the defense of Mr. Penrod." In denying the motion to relieve, the court noted that the public defender had made a number of pretrial motions. ■ Where inadequate preparation is the contention, there is no basis for reversal of a *Marsden* ruling when the record shows that appointed counsel has given able representation.

There is no abuse of discretion shown in denying the motion to substitute and the judgment is affirmed.

Zenovich, Acting P. J., and Conn, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.