Filed 5/11/23  P. v. Colbert CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JACOB JAMONTE COLBERT,<br><br>        Defendant and Appellant. | A163243<br><br>(Alameda County<br>Super. Ct. No. 17CR026738) |

Defendant Jacob Jamonte Colbert appeals a judgment convicting him of second degree robbery and sentencing him to 15 years in prison. He contends the court erred by denying his pretrial motion for substitute appointed counsel and by denying his motion to remove a juror during deliberations for alleged misconduct. We find no error and affirm defendant's conviction. We agree with the parties, however, that recent amendments to Penal Code[1] section 1170 require that his sentence be vacated and the matter be remanded for resentencing.

**Background**

Defendant was charged with second degree robbery (§ 211) and illegal possession of a firearm (§ 29800, subd. (a)(1)). As to the robbery count, the information alleged that during the commission of the robbery defendant

_____

[1] All statutory references are to the Penal Code unless otherwise noted.

1

personally used both a firearm (§§ 12022.5, subd. (a), 12022.53, subds. (b) & (g)) and a stun gun (§ 12022, subd. (b)(1)). The information further alleged that defendant had one prior serious felony conviction (§ 667, subd. (a)(1)), one prior strike conviction (§§ 667, subd. (e)(1), 1170.12, subd. (c)(1)), and a prison prior (§ 667.5, subd. (c)).

At trial evidence was presented that on August 13, 2017, at around 2:30 p.m., a man and his two grandsons were robbed by two men. One displayed a gun and the other was carrying a taser. At trial, the man identified defendant as the robber who had the gun during the commission of the crime. Shortly after the incident, however, the man had identified defendant from a photographic lineup and reported that defendant was the man who had the taser.

The jury convicted defendant of second degree robbery but acquitted him of possession of a firearm by a felon and found not true the allegations that he personally used a firearm or stun gun during the commission of the crimes. In a bifurcated proceeding, the trial court found true the allegations that defendant had a prior serious felony conviction, a prior strike conviction, and had served a prior prison term.

The court sentenced defendant to an aggregate term of 15 years in prison. The court imposed the aggravated term of 5 years for second degree robbery, doubled to ten years for the prior serious felony conviction under section 667, subdivision (e)(1), with the imposition of an additional five-year recidivist enhancement pursuant to section 667, subdivision (a)(1).

Defendant filed a timely notice of appeal.

## Discussion

### 1. *Defendant's Motion for Substitute Appointed Counsel*

"When a defendant seeks new counsel on the basis that his appointed counsel is providing inadequate representation—i.e., makes what is commonly called a *Marsden* motion (*People v. Marsden* (1970) 2 Cal.3d 118)— the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of inadequate performance. A defendant is entitled to relief if the record clearly shows that the appointed counsel is not providing adequate representation or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result." (*People v. Smith* (2003) 30 Cal.4th 581, 604.) The court's denial of a *Marsden* motion is reviewed for an abuse of discretion. (*People v. Streeter* (2012) 54 Cal.4th 205, 230.) "Denial is not an abuse of discretion 'unless the defendant has shown that a failure to replace counsel would substantially impair the defendant's right to assistance of counsel.' " (*People v. Taylor* (2010) 48 Cal.4th 574, 599.)

About six weeks after appointed counsel began representing him, defendant made his *Marsden* motion requesting the appointment of a new attorney at the start of the preliminary hearing. Before denying the motion, the court conducted the required hearing, permitting defendant to state his concerns and questioning appointed counsel in response.

On appeal, defendant contends the court failed to question counsel regarding defendant's allegation that counsel had refused to explore plea negotiations with the prosecutor based on the ground requested by defendant. Specifically, in response to the trial court's questions, defendant explained at the hearing that he told his attorney he had information on other criminal cases that he would be willing to provide to the District

3

Attorney in exchange for a favorable plea offer but his attorney refused to pursue that possibility. Instead, against defendant's wishes, counsel told both defendant's father and defendant's girlfriend that defendant wanted to provide information in exchange for a favorable plea deal and that counsel told them he did not think that would be advisable while defendant was in jail. As a result, defendant did not "feel comfortable" with his attorney's continued representation.[2]

After defendant expressed his concerns, the trial court turned to appointed counsel with both specific questions and asked him to address any issues raised by defendant. Counsel, who had thirty-five years of criminal law experience, detailed the steps he had taken with regard to defendant's case and addressed some of the issues raised by defendant. With regard to plea bargaining, counsel reported that defendant had rejected a plea bargain with a nine-year sentence, explaining that "it's difficult to accept nine years when we don't have discovery completed." Counsel also reported that he had only had one conversation with defendant's father and that was on the day of his appointment.

Before ruling, the court asked defendant whether he had anything further to add. Defendant responded, "Yes. After I told him that I had information on other cases, he—and after he seen, I guess, a video of me, he

---

[2] Defendant expressed a litany of concerns about his representation at the hearing including counsel's refusal to request a bail reduction hearing, counsel's purported miscommunication regarding whether the gun charges had been dropped, whether counsel might harbor a racial bias against him and counsel's alleged disclosure of information about his case to another inmate. Some of these concerns were expressly addressed by counsel and considered by the court in its ruling denying defendant's motion. Others were not. On appeal, defendant has not raised any argument regarding these additional grounds for replacement of his attorney. Thus, any claim of error is waived.

started calling me, telling me I opened my big mouth and things of that nature." Defendant concluded, "I just didn't feel like he had my best interests at hand. Like, I didn't like the way he was calling me big mouth and things like that."

The court denied the motion, stating, "[T]he question is whether or not there's been evidence presented to . . . show that [counsel] is not adequately representing you as your attorney. And . . . I do not see any basis upon which I can make that conclusion here. [¶] There may be disagreements between you and some things that you may have to work out, but that would not— that does not amount to or lead to a determination or a finding that he's— that his representation is inadequate. He's been in the case for just over . . . six weeks. He has tried to obtain discovery from the district attorney, I guess, with not great results, but that may not be his fault."

Defendant contends the court abused its discretion by "neglecting to require defense counsel to respond to [defendant's] specific allegations" regarding plea negotiations because if defendant's allegations were true, "they required granting his motion to substitute counsel." We disagree.

The scope of the court's inquiry at a hearing on a *Marsden* motion is limited to determining whether counsel can provide adequate representation. (*People v. Penrod* (1980) 112 Cal.App.3d 738, 747 ["[I]nquiry into the attorney's state of mind is required only in those situations in which a satisfactory explanation for counsel's conduct or attitude toward his client is necessary in order to determine whether counsel can provide adequate representation."]; *People v. Turner* (1992) 7 Cal.App.4th 1214, 1219 [necessity that court question attorney "depend[s] on the nature of the grievances related by defendant."].) Contrary to defendant's argument, the trial court's inquiry into the grounds for defendant's motion was not inadequate. The trial

5

court encouraged defendant to explain each of the reasons he wanted another attorney and followed up in areas where the court needed clarification.

Here, in response to the court's questions, counsel discussed both the extent of plea bargaining that had occurred to date and his single conversation with defendant's father. Fairly read, counsel's comments support the conclusion that he believed it would be premature at that time to engage in plea negotiations because discovery was not complete. This tactical decision was reasonable whether the basis for negotiations was the facts of defendant's case or any purported knowledge by defendant of other criminal activity. The court could reasonably conclude that since counsel was still seeking discovery and had only represented defendant for six weeks, he and defendant could work out their disagreements regarding plea negotiations. Defendant's claim regarding counsel's conversation with his family also fails to establish a breakdown in the attorney-client relationship. Counsel was clear that he only spoke with defendant's family once, on the day of his appointment. Assuming without deciding that counsel made the comments attributed to him by defendant, counsel's suggestion not to discuss what information he might have to disclose to others was reasonable given that he had already determined it was premature to engage in plea negotiations with the prosecutor. No further questioning was required. (See *People v. Turner, supra,* 7 Cal.App.4th at p. 1219 ["Once the court ascertained counsel's belief there were no grounds for a suppression motion, no further inquiry on that complaint was necessary."].) In sum, defendant's statement that he did not "feel comfortable" with his attorney representing him is insufficient to support a finding of irreconcilable conflict. (*People v. Berryman* (1993) 6 Cal.4th 1048, 1068, 1070, overruled on another ground in *People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1 [claimed "lack of trust in, or inability to get

6

along with" counsel is not "sufficient to compel appointment of substitute counsel."].) The trial court did not abuse its discretion in finding that the defendant was not denied the assistance of counsel or that the relationship was substantially impaired. (*Ibid.*; see also *People v. Smith*, *supra*, 30 Cal.4th at p. 604 [defendant entitled to relief if appointed counsel is not providing adequate representation or defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result].) Accordingly, the court did not err in denying defendant's *Marsden* motion.

### 2. *Juror Misconduct*

On June 5, 2019, after the jury was instructed and left the courtroom to begin deliberations, Alternate Juror No. 2 stayed behind in the courtroom to report an incident she had observed the previous afternoon. She explained that as the members of the jury were standing in a line, waiting to enter the jury room to retrieve their belongings before leaving for the day, she heard a juror standing directly in front of her say, "He is still guilty," and then, that juror said, "[w]e're still not allowed to talk about it." She did not know the name of the juror who made the comments but described him as a Caucasian man who had been sitting in one of the two juror seats closest to the judge. He had been wearing a blue jacket or blazer when she heard the comments. After consulting with the attorneys, the court determined that Juror No. 11 most closely matched the alternate's description.

The court and counsel agreed to question the jurors individually. The court called all the jurors to the courtroom and told them that there would be a pause in deliberations so the court could question the jurors one at a time. Starting with Juror No. 7, the court asked, "So before deliberations began this morning, including any time yesterday, did you express an opinion as to

the defendant's guilt or innocence?" Juror No. 7 responded, "No." The court asked, "Did you [hear] anyone else express an opinion as to the defendant's guilt or innocence?" Juror No. 7 responded, "No." The court repeated these questions to jurors 1 through 6, 8 through 10, and 12. Each juror responded that they had neither expressed any opinion nor heard anyone else express an opinion regarding defendant's guilt or innocence. Juror No. 11 was questioned more extensively but repeatedly confirmed that he had not expressed an opinion about defendant's guilt or innocence and that he had not heard anyone else do so.

After the court questioned the jurors, defendant moved for a mistrial or alternatively, requested that Juror No. 11 be replaced by the first alternate juror. Counsel argued that Juror No. 11's pauses before answering suggested that he had not been truthful with the court and that he had improperly made up his mind regarding defendant's guilt before being instructed by the court. The court declined to dismiss Juror No. 11 and denied the mistrial motion. The court acknowledged that Juror No. 11 had "hesitate[d] in his answers and seemed somewhat defensive" in response to the court's questions, but ultimately the court found that Juror No. 11 was credible in his denial and that he did not violate the order of the Court. The court found further that Alternate Juror No. 2 was not credible. The court explained, "She slept through half the trial to begin with. I am not sure what motivates her to say what she said. But if it's true what she said, then she's the only one who heard it, if it is true. As far as credibility and non-hesitation[,] all 11 of other the jurors didn't hear a thing and it wasn't even close. And I judge all of them to be credible on balance as to the credibility between . . . [Juror No.] 11 and [Alternate Juror No.] 2 on this issue. I believe [Juror No.] 11. And I am not going to dismiss him from the jury." Later, the court clarified that he

8

did not believe Juror No. 11 made the reported statements but that even if he had, it would at most have been a "technical" violation of the court order "because it was post-argument, defense argument, rebuttal, mid-instructions. So pretty much as close as you could get."

"A juror who violates his or her oath and the trial court's instructions is guilty of misconduct." (*People v. Linton* (2013) 56 Cal.4th 1146, 1194 (*Linton*).) In so far as the court is required "to admonish the jurors not 'to form or express any opinion about the case until the cause is finally submitted to them,' a juror who prejudges a case and so fails to deliberate is also guilty of misconduct." (*Ibid.*)

"When a court becomes aware of possible juror misconduct, it must ' " ' "make whatever inquiry is reasonably necessary" to determine whether the juror should be discharged.' " ' [Citation.] The nature of the court's inquiry may consist of a full hearing or informal questioning of the juror in the presence of counsel. [Citation.] 'The specific procedures to follow in investigating an allegation of juror misconduct are generally a matter for the trial court's discretion.' " (*People v. Johnsen* (2021) 10 Cal. 5th 1116, 1170.)

In determining whether a juror committed misconduct, a reviewing court accepts " ' "the trial court's credibility determinations and findings on questions of historical fact if supported by substantial evidence." ' " (*Linton*, *supra*, 56 Cal.4th at p. 1194.) A trial court's decision whether or not to discharge a juror is reviewed for abuse of discretion. (*People v. Holloway* (2004) 33 Cal.4th 96, 124–125.)

Substantial evidence supports the trial court's credibility findings. Juror No. 11 repeatedly denied expressing any opinion regarding defendant's guilt. The remaining 11 jurors also denied hearing any other juror express an opinion regarding defendant's guilt. Although Alternate Juror No. 2 believed

she overheard Juror No. 11, the court reasonably concluded that her perception of the incident might have been unreliable given that she had appeared overly sleepy throughout the trial and denied falling asleep when it appeared to the trial court she had been asleep during trial that afternoon. Additionally, immediately before the alleged incident, the jurors were reminded not to make up their minds or express any opinions about the case until after they discussed the case with the other jurors during deliberations. Absent evidence to the contrary, we presume the jurors followed the court's instruction. (*People v. Parker* (2022) 13 Cal.5th 1, 71 ["Jurors are presumed to follow the instructions given."].)

In any event, even assuming Juror No. 11 made some comment regarding defendant's guilt while standing in line, the comment was "solitary and fleeting" and heard by no other juror. (See *People v. Wilson* (2008) 44 Cal.4th 758, 839 [juror's "solitary and fleeting comments" amounted to a "trivial" or "technical" violation of the court's admonition that did not support removal of the juror]; *People v. Loot* (1998) 63 Cal.App.4th 694 [applying rule in pre-verdict context].) As the court noted, all evidence had been received, closing arguments were complete and the court had started instructing the jury. Accordingly, the court did not err in denying defendant's request to remove Juror No. 11 and his motion for a mistrial.

### 3. *Resentencing under Senate Bill 567 and Assembly Bill 124*

At the time of defendant's sentencing, section 1170, subdivision (b) permitted trial courts to select the appropriate term "within the sound discretion of the court." (Former § 1170, subd. (b).) On January 1, 2022, while this appeal was pending, section 1170 was amended in two significant ways. First, pursuant to Senate Bill No. 567, the middle term has become the presumptive term (§ 1170, subd. (b)(1)), and the trial court is authorized to

10

impose the upper term only if there is one or more aggravating circumstances based on facts either "stipulated to by the defendant, or . . . found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial" (§ 1170, subd. (b)(2)). Second, pursuant to Assembly Bill 124, trial courts must impose the lower term (unless contrary to the interests of justice) if certain circumstances – including the defendant's childhood trauma or youth – were contributing factors to the commission of offense. (§ 1170, subd. (b)(6)(A).) These amendments apply retroactively to nonfinal cases like defendant's. (*People v. Jones* (2022) 79 Cal.App.5th 37, 45; *People v. Flores* (2022) 73 Cal.App.5th 1032, 1039.)

We agree with the parties that remand for resentencing is appropriate in this case because the trial court, in selecting the upper term, relied on factors neither admitted by defendant nor found to be true beyond a reasonable doubt. Under the "full resentencing rule," the trial court, on remand, can also exercise its discretion to consider whether a low term is appropriate as set forth in section 1170, subdivision (b)(6). (*People v. Buycks* (2018) 5 Cal.5th 857, 893.)

## Disposition

Defendant's sentence is vacated and the matter remanded for resentencing. The judgment is affirmed in all other respects.

_____

Fineman, J.[*]

WE CONCUR:


_____

Brown, P. J.


_____

Goldman, J.

---

[*] Judge of the Superior Court of California, County of San Mateo, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.