Filed 1/30/20; on transfer from Supreme Court

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>ALEXANDER WINN,<br><br>     Defendant and Appellant. | H045157<br>(Monterey County<br>Super. Ct. No. SS160299) |

A jury found defendant Alexander Winn guilty of first degree murder for the stabbing death of David Derrington after Derrington had Winn and his wife evicted from their home. The jury also found true a deadly weapon enhancement, and Winn admitted he had previously served five prior prison terms. The trial court imposed a total term of 31 years to life in prison, including five one-year terms for the prior prison term enhancements.

Winn initially raised two claims on appeal. First, he contended the trial court erred by admitting a photograph of the victim taken prior to the offense, while the victim was still alive. To the extent Winn's trial counsel failed to lodge certain objections to the photograph, Winn argued counsel provided ineffective assistance. Second, he contended the trial court erred during a post-verdict *Marsden*[1] hearing by failing to inquire into Winn's claim that his counsel deprived him of the opportunity to testify in his defense.

In our prior opinion, we found no prejudicial error from those claims, and we affirmed the judgment. The Supreme Court then granted Winn's petition for review and

---

[1] *People v. Marsden* (1970) 2 Cal.3d 118.

transferred the matter back to this court with directions to vacate our prior opinion and reconsider the matter in light of Senate Bill No. 136 (SB 136). SB 136 amended Penal Code section 667.5, subdivision (b) to allow imposition of a one-year enhancement for a prison prior term only if the prior conviction is for a sexually violent offense. (Stats. 2019, ch. 590, § 1, eff. Jan. 1, 2020.) Winn contends we must apply the new law retroactively. The Attorney General concedes, and we accept the concession. We will strike the prior prison term enhancements, modify the sentence, and affirm the judgment as modified.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Procedural Background

The prosecution charged Winn with willful, deliberate, premeditated murder. (Pen. Code, § 187, subd. (a).) The information further alleged Winn personally used a deadly weapon in the commission of the offense, and that he had previously served five prior prison terms. (Pen. Code, § 12022, subd. (b)(1); former Pen. Code, § 667.5, subd. (b).)

The case proceeded to jury trial in April 2017. Winn admitted the prior prison term allegations. The jury found Winn guilty of first degree murder and found the deadly weapon allegation true.

The trial court imposed a total sentence of 31 years to life in prison, consisting of a term of 25 to life for count 1, with a consecutive one-year term for the deadly weapon enhancement and five consecutive one-year terms for the prior prison term enhancements.

### B. Facts of the Offense

#### 1. Overview

At the time of the offense, Winn was married to Traci Derrington, who lived with Winn at a house in Salinas.[2] Winn was charged with killing Traci's ex-husband, David Derrington, in February 2016 after Derrington had Winn and Traci evicted from their house. Traci's marital separation agreement with Derrington had required her either to sell the Salinas house and share the proceeds with Derrington, or to give Derrington possession of the house, whereupon he would compensate her. But Traci failed to comply with the agreement and continued to occupy the house, causing Derrington to obtain a writ of possession in January 2016. Soon thereafter, a deputy sheriff evicted Winn and Traci from the house. About two weeks after the eviction, Winn returned to the house and stabbed Derrington to death. At trial, Winn did not dispute that he killed Derrington; rather, Winn argued that he did so in self-defense.

#### 2. Events Preceding the Killing

The prosecution presented several witnesses who testified about Winn's state of mind in the days preceding the eviction and stabbing. Terry Rockwood, the lawyer retained by Derrington to obtain the writ, spoke with Winn on the phone in early January 2016. Rockwood testified that Winn was angry, "not terribly polite," and "didn't have a good attitude about moving out of the house." Alice Taylor, Derrington's girlfriend of 12 years, was at the house on the day of the eviction. Taylor testified that she was sitting on a retaining wall in front of the house when Winn told her, "I have a knife, and I know how to use it." Taylor and Derrington felt threatened, and Taylor called the police that afternoon to report it.

---

[2] We refer to Traci Derrington by her first name to avoid confusion.

Suzanne Smith, Traci's friend, testified that "[t]ensions were rising" before the eviction because "Traci didn't want to leave her house. She basically wanted David dead." Smith testified that Winn said, referring to Derrington, "That fucker needs to die."

Cameron Bush, a longtime friend of Derrington's, lived in the same neighborhood where the house was located. Traci would cut Bush's hair, and he had known Winn for about five or six years. About two months before the killing, Bush and a friend were driving home when they saw Winn standing at a bus stop, whereupon they stopped to pick him up. Winn got in the back seat of the car and asked them if they could get him a gun. Winn said he needed a gun due to the property dispute with Derrington, and Winn added that he was going to "handle business" and kill Derrington. Bush did not get a gun for Winn. Bush admitted he had multiple prior felony convictions, and he was in custody at Monterey County jail when he contacted the police with information about the killing. In exchange for his cooperation, the police offered to help get him out of jail and to make sure a warrant for his arrest was recalled.

Teresa Davis was a friend of Traci's, and Traci was her hair stylist. Davis testified that she had a phone call with Winn in which he blurted out, "I'm going to kill the mother fucking kids' dad," referring to Derrington. Davis told Traci about it, but Traci "laughed it off."

### 3. The Homicide

On February 21, 2016, about two weeks after Winn and Traci were evicted from the house, Traci called 911 to report the stabbing. Traci told the operator that she and Winn had come to the property to pick up some of their belongings, but that Winn and Derrington "just got in a big fight" and Winn had stabbed Derrington. In the background, Winn stated, "He attacked me," "He tried to attack me," and, "He shouldn't have thrown that chair at me." Traci told the operator Winn had stabbed Derrington with a military knife that was six to eight inches long.

4

The police arrived soon thereafter and took Winn into custody. They did not see any injuries anywhere on his hands or body. There was a large knife with blood on it sitting on the trunk of a nearby car. Derrington was lying on the ground with multiple bloody holes in his shirt around the center of his shirt and the left side of his body. His eyes and mouth were open, and there was frothy red blood coming out of his mouth. The police could not detect any pulse.

The forensic pathologist who autopsied Derrington found 19 stab wounds, three incised wounds, and a small skin puncture on his body. He had also suffered "about five minor abrasions to his upper extremities and a couple of contusions to his left toe." Derrington had been stabbed in the back multiple times and had suffered wounds on his forearm and wrist consistent with defensive wounds.

## II. DISCUSSION

### A. Admission of the Victim's Photograph

Winn contends the trial court erred by admitting a photograph taken of the victim while he was still alive. Winn argues the photograph was irrelevant and prejudicial, such that its admission violated Evidence Code sections 210 and 352, and violated his federal due process rights. He further contends his trial counsel provided ineffective assistance by failing to lodge sufficient objections on the last two grounds. The Attorney General contends the trial court did not abuse its discretion, and that Winn forfeited his claims under Evidence Code section 352 and federal due process by failing to object. Even assuming the trial court erred or trial counsel was ineffective, the Attorney General argues that Winn suffered no prejudice.

#### 1. Background

Winn moved pretrial to exclude a photograph taken of David Derrington when he was still alive. The photograph consisted of a portrait-style headshot showing the victim smiling while wearing a dress shirt, tie, and glasses. Winn's trial counsel filed a written motion arguing the photograph was irrelevant under Evidence Code sections 210 and

5

350.  Counsel stipulated that Derrington was alive just prior to the stabbing, and counsel argued the photograph was thereby inadmissible under *People v. Hendricks* (1987) 43 Cal.3d 584 (photograph of victim should have been excluded where the victim's identity was not in dispute) and *People v. Ramos* (1982) 30 Cal.3d 553 (*Ramos*) (same; reversed on other grounds).

At a hearing on the matter, the prosecution argued the photograph was relevant to show what Derrington looked like before the killing.  The prosecution also pointed out that the photograph showed Derrington wearing glasses, and a pair of crushed glasses were found at the scene next to his body.  Finally, the prosecution argued that several witnesses—e.g., Derrington's attorney, Terry Rockwood—would testify about their past interactions with Derrington, and they could use the photograph to identify who they were testifying about.  The trial court ruled that the photograph was relevant for that purpose.  Winn's counsel offered to stipulate that the witnesses were talking about Winn, but the court ruled that the prosecution was entitled to prove his identity using the photograph.  Accordingly, the trial court denied the motion to exclude.

### 2.  *Legal Principles*

" 'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.)  We apply the abuse of discretion standard of review to the admission of evidence over relevance objections.  (*People v. Kipp* (2001) 26 Cal.4th 1100, 1123.)

To establish ineffective assistance of counsel, Winn must show that counsel's performance was deficient and that he was prejudiced by the deficiency.  (*People v. Ledesma* (1987) 43 Cal.3d 171, 216-217.)  To prove prejudice, Winn bears the burden to show a reasonable probability that, but for his trial counsel's errors, the result would have been different.  (*Id.* at pp. 217-218.)  A reasonable probability is one " 'sufficient to

6

undermine confidence in the outcome.' " (*Id.* at p. 218, quoting *Strickland v. Washington* (1984) 466 U.S. 668, 693-694.)

### 3. *Winn Suffered No Prejudice from Admission of the Photograph*

In support of his claim under Evidence Code section 210 (relevance), Winn relies on *Ramos*, *supra*, 30 Cal.3d 553, and *People v. Poggi* (1988) 45 Cal.3d 306, 323 (*Poggi*). Both cases held that trial courts erred by admitting photographs showing the victim alive before a homicide where the photographs were irrelevant to any disputed issue. The Attorney General relies on *People v. Weaver* (2001) 26 Cal.4th 876, 934 (no abuse of discretion to admit gruesome photographs of homicide victim); *People v. Boyette* (2002) 29 Cal.4th 381, 424 (photographs of murder victims while they were alive is not necessarily inadmissible); *People v. Harris* (2005) 37 Cal.4th 310, 331 (no error in admission of video showing victim while still alive); *People v. DeSantis* (1992) 2 Cal.4th 1198, 1230 (photograph of victims while alive was relevant to identity); and *People v. Osband* (1996) 13 Cal.4th 622, 677 (*Osband*) (no error in admission of photograph of victim while alive). Winn contends those cases are distinguishable, and he argues his case more closely resembles *Ramos* and *Poggi*.

As the California Supreme Court has admonished, "[W]e have repeatedly cautioned against the admission of photographs of murder victims while alive unless the prosecution can establish the relevance of such items. [Citations.] Otherwise, there is a risk that the photograph will merely generate sympathy for the victims." (*Osband, supra,* 13 Cal.4th at p. 677.) To comply with this stricture, the trial judge should carefully consider the actual relevance of photos of murder victims while alive, and, if such evidence is indeed admissible, state the grounds on the record, thereafter exercising vigilance to restrain counsel from the use of the photos for a purpose beyond that for which they were admitted.

With this admonition in mind, we have concerns about the manner in which the prosecution used the photograph and the trial court's failure to ensure it would be used

only for admissible purposes.  Given there was no dispute that Derrington was the decedent, this evidence had minimal probative value.  The underlying events took place in a small community wherein the identity of the victim was known.  Furthermore, the prosecution's use of the photograph went beyond the purposes for which the trial court admitted it.  The court admitted the evidence for the prosecution's witnesses to establish that Derrington was the person to whom the witnesses had spoken.  But the prosecutor used the photograph at the start of his opening statement, telling the jury to "meet David Derrington on one of his better days," while referencing the photo.  Given that defense counsel had explicitly argued that the photograph could be used in an inflammatory fashion, the trial court should have limited the use of the evidence to comply with the court's grounds for admitting it.

Nonetheless, we find no prejudice in the trial court's admission of the photo because the evidence against Winn was overwhelming.  There was no dispute that he stabbed Derrington multiple times, and his claim of self-defense was not credible.  He had no defensive wounds, and little evidence to support self-defense apart from his own self-serving statements.  Moreover, Winn had an obvious motive to attack Derrington, and the prosecution presented multiple witnesses who testified to Winn's malicious state of mind in the days preceding the killing.  Derrington's lawyer testified that Winn was angry about the eviction.  Derrington's girlfriend testified that Winn told her, on the day of the eviction, "I have a knife, and I know how to use it."  She reported it to the police.  Traci's friend Suzanne Smith quoted Winn as stating, "That fucker needs to die."  Cameron Bush testified that Winn was looking for a gun to "handle business" with Derrington, and that he said he would kill Derrington.  And Teresa Davis heard Derrington tell her, "I'm going to kill the mother fucking kids' dad," referring to Derrington.  Winn argues that the jury might have questioned the credibility of these witnesses, but we do not find it reasonably probable that the jury would have reached a more favorable outcome in the absence of any asserted error.  (See *Ramos*, *supra*,

30 Cal.3d at p. 578 [erroneous admission of victim's photograph while alive was not prejudicial given the strength of the evidence]; *Poggi*, *supra*, at p. 323 [same].)

As for Winn's claims under the federal due process clause and Evidence Code section 352, the Attorney General accurately points out that Winn lodged no objections on these grounds, thereby forfeiting the claims. Winn asserts ineffective assistance of counsel for the failure to object, but for the reasons above—the overwhelming evidence of premeditated murder—we conclude he cannot show he was prejudiced, as there was no reasonable likelihood the jury would have reached a more favorable outcome the evidence been excluded. Even assuming Winn's federal due process rights were violated, the strength of the evidence was such that the record establishes any error was harmless beyond a reasonable doubt under *Chapman v. California* (1967) 386 U.S. 18. We therefore conclude these claims are without merit.

## B. The Marsden *Hearing*

Winn contends the trial court erred by failing to inquire into his allegations during a post-verdict *Marsden* hearing at which he asserted his trial counsel had rested without consulting with Winn about whether he wanted to testify. The Attorney General contends the court sufficiently inquired into the matter, and that its denial of the motion was not an abuse of discretion.

### 1. *Background*

After the jury found Winn guilty, he moved for new counsel under *Marsden*. In his written motion, Winn complained that, once the prosecution rested, he had expected his trial counsel to call an expert witness to testify as a forensic pathologist about "the effects of extreme perceived threat on the human body." Winn argued, "I can't stress enough that she was the 'meat' of my defense," and added that he never would have agreed to allow counsel to rest without calling her. He stated, "I was under the impression that my expert, and probably me, would be testifying" after the prosecution rested. To Winn's surprise, however, his trial counsel rested without calling either the

9

expert or Winn to testify, and without conferring with Winn about these decisions. Winn asserted, "Your honor, I never would have agreed to rest without mounting any defense. I was shocked and stunned to say the least. I was <u>not</u> <u>allowed</u> <u>to</u> <u>testify</u> <u>on</u> <u>my</u> <u>own</u> <u>behalf</u>, and didn't know what to do." (Underlining in original.)

The trial court held a hearing on the matter in a closed courtroom outside the prosecution's presence. When the court inquired of Winn, he reiterated that the expert witness was "the heaviest part of my defense, possibly besides my own testimony," and explained that trial counsel made the decision not to let the expert testify after he and counsel agreed the expert would testify. He set forth the details of his communications with counsel concerning the expert, and asserted that counsel "failed to confer with me about the most important decision of the whole trial." Winn explained that he had expected the expert to testify but that counsel rested and offered no defense without consulting Winn. He added, "I never got a chance to testify on my own behalf or anything." Winn asserted that he never would have agreed to these decisions, "and the fact remains that he made decisions and didn't let my expert testify nor me testify and rested the case without me putting any defense. And he made those decisions, but they weren't his to make; they were mine." On these grounds, Winn contended he had been deprived of adequate representation and "deprived of a fair chance to answer the charges against me."

The trial court responded by summarizing Winn's claims as putting forth "three points": that he wanted the expert to testify; that Winn felt he was not involved in the decision not to have her testify; and that all this resulted in inadequate representation. Winn responded that he agreed with these points. The court did not ask about Winn's claim that he was deprived of the chance to testify. The court then advised Winn as follows: "At this stage of the proceedings, once there has been a conviction, you will have appellate rights. And if you decide to appeal, you will be able to file an appeal and a new attorney will be appointed and some of the issues that you brought up here will be

10

brought up. [¶] The issue that a *Marsden* hearing is about is whether or not [defense counsel] has -- is representing you appropriately now. And when I say 'now,' I mean for the hearings that are before this Court today and until I finally impose sentence. [¶] And reasons that the Court would grant a *Marsden* would be if you thought that he was incompetent and was not doing his job. I haven't heard that from you. [¶] And I'm talking about the things that are going forward as far as sentencing and a new trial motion that's pending. [¶] Another reason would be that you just don't—are not able to communicate. You're at odds with each other so much so that he's not hearing you and you're not hearing him, and you just can't get along at all. And I'm not hearing that either." The court added that the motion "[d]oesn't have to do with what has happened kind of changing the way things happened already. The things that have happened already, if you want to appeal, them can be appealed by you to the Court of Appeal."

The court then asked defense counsel for a statement. Counsel declined to respond, stating, "I don't think that I can make any statements that are actually relevant to the Court's granting or denying of a *Marsden* Motion in order to ensure that his rights are protected on appeal. Unless the Court has a specific question of me, I'm prepared to submit to the Court, unless the Court wants information from me for this ruling." The court made no further inquiry.

As to the decision not to introduce expert testimony, the court recounted discussions the parties held before the close of evidence, and the court explained that "based on the way the district attorney presented his case, it made it so that that doctor's testimony could not be allowed in." As to Winn's relationship with trial counsel, the court found that Winn was able to communicate well with counsel and respected counsel, but that "some of the ways things went down during the trial were not the way you would have wanted them to go down. [¶] And those are things that would be appellate issues as opposed to reasons to fire Mr. O'Keefe at this time." On this basis, the court denied the motion.

11

## 2. *Legal Principles*

When a defendant seeks to discharge appointed counsel and asserts inadequate representation, the trial court must permit the defendant to explain the basis of his or her contention and to relate specific instances of the attorney's inadequate performance. (*People v. Johnson* (2018) 6 Cal.5th 541, 572.) "Depending on the nature of the grievances related by defendant, it may be necessary for the court also to question his [or her] attorney." (*People v. Turner* (1992) 7 Cal.App.4th 1214, 1219.) "[I]nquiry into the attorney's state of mind is required only in those situations in which a satisfactory explanation for counsel's conduct or attitude toward his client is necessary in order to determine whether counsel can provide adequate representation." (*People v. Penrod* (1980) 112 Cal.App.3d 738, 747.) "It is the very nature of a *Marsden* motion, at *whatever* stage it is made, that the trial court must determine whether counsel has been providing competent representation. Whenever the motion is made, the inquiry is forward-looking in the sense that counsel would be substituted in order to provide effective assistance in the *future*. But the decision must always be based on what has happened in the *past*." (*People v. Smith* (1993) 6 Cal.4th 684, 694-695 (*Smith*).) "[T]he trial court should appoint substitute counsel when a proper showing has been made at any stage. A defendant is entitled to competent representation at all times, including presentation of a new trial motion . . . ." (*Id.* at p. 695.) "The error is reversible unless the record shows beyond a reasonable doubt that the error did not prejudice the defendant." (*People v. Eastman* (2007) 146 Cal.App.4th 688, 697 (*Eastman*) [disagreed with on other grounds by *People v. Sanchez* (2011) 53 Cal.4th 80, 84].)

## 3. *Winn Suffered No Prejudicial Error in the Denial of His* **Marsden** *Motion*

Winn does not argue that any decision not to call the expert witness constituted meritorious grounds for his *Marsden* motion. His contention is that the trial court erred by failing to inquire about his claim that trial counsel deprived him of the right to testify on his own behalf by resting without conferring with Winn about it. He also argues that

12

the trial court erred by focusing on the adequacy of trial counsel's present or future representation.

Winn's arguments have merit on these points. The Attorney General does not dispute that "[e]very criminal defendant is privileged to testify in his own defense . . . ." (*Harris v. New York* (1971) 401 U.S. 222, 225.) Nor does the Attorney General dispute that Winn had the right to make that decision. "Although tactical decisions at trial are generally counsel's responsibility, the decision whether to testify, a question of fundamental importance, is made by the defendant after consultation with counsel." (*People v. Carter* (2005) 36 Cal.4th 1114, 1198.) Winn's assertion that his trial counsel failed to consult with him about his desire to testify raised a serious question about whether his counsel provided constitutionally adequate representation. The trial court should have questioned counsel about this claim. The court's focus on counsel's present or future conduct was incomplete; if trial counsel's performance was deficient at an earlier stage of the trial, Winn had the right to new counsel for the purposes of sentencing or moving for a new trial. (*Smith*, *supra*, 6 Cal.4th at p. 695.)

Winn contends that we should therefore conditionally reverse and remand the case for a new hearing on the *Marsden* motion. Indeed, this type of error requires reversal unless "the record shows beyond a reasonable doubt that the error did not prejudice the defendant." (*Eastman*, *supra*, 146 Cal.App.4th at p. 697.) We conclude, however, that this is that rare case that does not compel reversal under that standard. For the reasons set forth above, the evidence against Winn was overwhelming. There was no dispute that he stabbed Derrington numerous times, and the case for self-defense was weak, with no forensic support whatsoever. The eviction provided an obvious motive for the attack, and numerous witnesses testified to evidence of premeditation in the form of Winn's verbal threats in the days preceding the killing. Moreover, had Winn testified, the prosecution likely would have introduced evidence of his numerous prior convictions, which included multiple felonies relevant to impeach his credibility.

13

Accordingly, while we conclude the trial court erred by failing to inquire further about Winn's claim his counsel deprived him of the right to testify, we find the error harmless beyond a reasonable doubt.

### C. *Senate Bill No. 136 Requires Us to Strike the Enhancements for Prior Prison Terms*

In our prior opinion, we found no prejudicial error in Winn's claims and we affirmed the judgment. After our decision was final, SB 136 took effect and Winn petitioned the Supreme Court for review seeking the benefit of the newly enacted law. The Supreme Court granted the petition and transferred the matter back to this court with directions to vacate our opinion and reconsider the matter. We then vacated our prior opinion and requested supplemental briefing from the parties regarding the effect of SB 136.

SB 136 amended Penal Code section 667.5, subdivision (b) such that a one-year enhancement for a prior prison term shall be imposed only if the prior term was for a sexually violent offense. The newly-amended subdivision now provides: "Except where subdivision (a) applies, where the new offense is any felony for which a prison sentence or a sentence of imprisonment in a county jail under subdivision (h) of Section 1170 is imposed or is not suspended, in addition and consecutive to any other sentence therefor, the court shall impose a one-year term for each prior separate prison term for a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code, provided that no additional term shall be imposed under this subdivision for any prison term served prior to a period of five years in which the defendant remained free of both the commission of an offense which results in a felony conviction, and prison custody or the imposition of a term of jail custody imposed under subdivision (h) of Section 1170 or any felony sentence that is not suspended." (Pen. Code, § 667.5, subd. (b).)

14

The trial court imposed five one-year terms under the prior version of section 667.5. None of the prior prison terms was imposed for a sexually violent offense as defined by the amended version of section 667.5. Winn now contends he is entitled to retroactive benefit of the amended section 667.5, such that we should strike the five one-year prison terms. The Attorney General concedes the merit of this claim.

The concession is well-taken. Generally, a statute applies prospectively unless otherwise stated in the language of the statute, or when retroactive application is clearly indicated by legislative intent. (*People v. Brown* (2012) 54 Cal.4th 314, 319-320.) However, "[w]hen the Legislature has amended a statute to reduce the punishment for a particular criminal offense, we will assume, absent evidence to the contrary, that the Legislature intended the amended statute to apply to all defendants whose judgments are not yet final on the statute's operative date." (*Id.* at p. 323, citing *In re Estrada* (1965) 63 Cal.2d 740.) By eliminating the one-year enhancement for prior prison terms that were not imposed for sexually violent offenses, the newly amended section reduces the punishment for such offenses.

Because Winn's conviction is not yet final, he is entitled to the retroactive benefit of the change in law. Furthermore, because the trial court imposed the maximum possible sentence, we need not remand the matter for resentencing. (*People v. Lopez* (2019) 42 Cal.App.5th 337, 342.) Accordingly, we will strike the enhancements, modify the sentence, and affirm the judgment as modified.

### III. DISPOSITION

The five one-year prison terms previously imposed under Penal Code section 667.5, subdivision (b) are stricken, and the sentence is modified to an aggregate term of 26 years to life in state prison. Upon issuance of the remittitur, the trial court shall send an amended abstract of judgment to the Department of Corrections. The judgment is affirmed as modified.

15

_____

Greenwood, P.J.

I CONCUR:

_____

Danner, J.

People v. Winn
No. H045157

BAMATTRE-MANOUKIAN, J., Concurring.

I concur in the judgment. I write separately to express my view that the trial court properly limited the prosecution's use of the photograph of David Derrington taken while he was alive.

The trial court ruled that the prosecution could use one photograph of Derrington alive (the prosecution sought to use two) for the prosecution witnesses to identify the person they were testifying about, finding that "it would be reasonable" for the prosecution's witnesses "to be able to identify who [they are] talking about." The court determined that none of the crime scene or autopsy photos were "useful to be able to identify someone. So a photo such as People's [exhibit] 1 or 2 would be useful for that purpose and would be relevant for that purpose." The court ruled that the photographs were not relevant "just to say that [Derrington] was alive at some point and then no longer alive at another." The prosecution chose to use exhibit 2, a headshot of Derrington (6 ¼ in. x 7 ½ in.), showing him in a dress shirt and tie.

I believe the trial court's ruling was a proper exercise of its discretion. (See *People v. Anderson* (2018) 5 Cal.5th 372, 402 [" 'The trial court has broad discretion both in determining the relevance of evidence and in assessing whether its prejudicial effect outweighs its probative value.' [Citation.]"]; *People v. Boyette* (2002) 29 Cal.4th 381, 424 (*Boyette*) ["Trial courts have wide discretion in admitting such photographic evidence . . . . Photographic evidence of murder victims while they were alive is not necessarily inadmissible"].)

Contrary to the trial court's ruling, the prosecution used exhibit 2 during its opening statement, telling the jury to "meet David Derrington on one of his better days." Defendant did not object. The prosecution then used the photograph in conformance with the trial court's ruling, for identification purposes during the testimony of its first witness.

Counsel has a duty to object to the unauthorized use of evidence and the trial court has a duty to appropriately manage the proceedings and ensure that evidence is used only

for admissible purposes.  To the extent Derrington's photograph was used for purposes beyond that for which it was admitted, I agree with the majority that defendant was not prejudiced.  (See *Boyette*, *supra*, 29 Cal.4th at p. 424.)

_____

BAMATTRE-MANOUKIAN, J.

**People v. Winn**
**H045157**

Trial Court:                                    Monterey County Superior Court
                                                Superior Court No.: SS160299

Trial Judge:                                    The Honorable Julie R. Culver

Attorney for Defendant and Appellant            Gene D. Vorobyov
ALEXANDER WINN:                                 under appointment by the Court
                                                of Appeal for Appellant

Attorneys for Plaintiff and Respondent          Xavier Becerra,
THE PEOPLE:                                     Attorney General of California

                                                Lance E. Winters,
                                                Chief Assistant Attorney General

                                                Jeffrey M. Laurence,
                                                Senior Assistant Attorney General

                                                Seth K. Schalit,
                                                Supervising Deputy Attorney
                                                General

                                                Berit G. Fitzsimmons
                                                Deputy Attorney General

People v. Winn
H045157